SALTER, J.
This is another[1] in a series of appeals and petitions addressing the 2008 amendment to the personal injury protection (PIP) insurance law authorizing insurers to limit reimbursable charges to 200% of the reimbursable rates under the Medicare Part B fee schedules, section 627.736(5)(a)2.f., Florida Statutes (2008). In this case, the policy issue date and effective date, the insured’s accident date, and the delivery of covered diagnostic services (two MRIs) all occurred after the January 1, 2008, effective date of the amendment.
The sole issue before the county court was one of law: did the insurer correctly apply the PIP law, as amended, in limiting reimbursement to the appellee based on the amendment and fee schedules, or was the insurer obligated to reimburse the amount claimed by the MRI provider to be “reasonable” without reference to the amendment and schedules? The county court found for the appellee, but certified to this court under section 34.017, Florida Statutes (2011), the following question:
MAY AN INSURER LIMIT PROVIDER REIMBURSEMENT TO 80% OF THE SCHEDULE OF MAXIMUM CHARGES DESCRIBED IN F.S. 627.736(5)(a) IF ITS POLICY DOES NOT MAKE A SPECIFIC ELECTION TO DO SO?
The county court aptly observed in her final judgment that the “issue is capable of great repetition in County Courts throughout the State of Florida,” that the same issue is being litigated by this PIP insurer alone, one among many, in “hundreds of lawsuits throughout different counties,” and that uniformity “will serve to avoid the needless waste of judicial resources.”
This court has now decided this issue, and we affirm based on that decision. Geico Indem. Co. v. Virtual Imaging *323 Servs., Inc., 79 So.3d 55 (Fla. 3d DCA 2011). This court concluded in that split decision that the 2008 PIP amendment impermissibly and ambiguously incorporated into PIP insurance policies “two different payment calculation methodologies”— “80% of all reasonable medical expenses,” versus “80% of 200% of the maximum allowable amount under the physician fee schedule of Medicare Part B.” Id. at 58.
That opinion does not mean, however, that the issue is so free from debate, unimportant, or unlikely to recur as to preclude further consideration by the Florida courts. Rather, and as the county court correctly noted, this is an issue that is important, recurring, and statewide. The Legislature’s amendment to the PIP statute sought to address the enormous costs and inefficiencies of the law prior to amendment. Litigation and fee-shifting to determine “reasonable” costs of standardized medical procedures should be passé by now. An MRI, for example, is now a common procedure. The medical cost accounting and national metrics supporting the Medicare Part B reimbursement figures for MRIs and other standard medical services are widely used and understood. An alternative charge based essentially on whatever the market will bear, on the other hand, invites litigation. A prevailing provider or insured may also recover attorney’s fees and costs, and resolution of these disputes also requires judicial resources at the expense of all State taxpayers. All of these circumstances are contrary to the original, no-fault objectives of the PIP statute.
Specific claim comparisons from this and another case involving this issue (replicated in those PIP cases that produce claims among the “approximately 250,000 auto accidents involving personal injuries”[2] each year in Florida), illustrate the economics. In this case, the appellee charged $3,600 for the two MRIs in question, and 80% of that amount is $2,880. Under the 2008 amendment, 80% of 200% of the allowable Medicare Part B charge came to $1,989.57. The “reasonable” charge, established after a lawsuit was filed and ruled upon, is over 44% higher than the amount computed using the schedule under the 2008 amendment (without even factoring in the legal and judicial costs of arriving at that result).
In MGA Ins. Co. v. All X-Ray Diagnostic Services, Case No. 3D12-414,[3] the x-ray provider billed $2,475, for which 80% or $1,980 was claimed under the PIP policy. The computation under the 2008 statutory amendment came to 80% of $435.22, for an allowable payment of $348.18. The “reasonable” amount invoiced is over 468% times the amount computed using the fee schedule. Runaway medical insurance costs and claims, of course, are borne by our citizens in the form of higher PIP premiums.
Finally, the Florida Supreme Court has repeatedly urged Florida courts to read statutes relating to the same subject or object in pan materia, in order to harmonize the provisions and give effect to the Legislature’s intent. Fla. Dept. of Highway Safety and Motor Vehicles v. Hernandez, 74 So.3d 1070, 1075 (Fla.2011); Hill v. Davis, 70 So.3d 572, 577 (Fla.2011). Policy provisions that this and other district courts[4] may deem ambiguous or anti *324 thetical ultimately may be deemed unambiguous by our Supreme Court. State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So.3d 566 (Fla.2011). In this case, that Court may ultimately conclude that “eighty percent of all reasonable expenses” for covered services that are not in the schedule of reimbursable amounts for Medicare Part B remains a viable and necessary computation methodology under PIP policies, while any covered service that is in the Medicare Part B schedule should be computed as specified by the 2008 amendment.
For these reasons, as well as those enumerated by the county court in certifying this case to us, we now certify to the Florida Supreme Court the following restated question of great public importance pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v):
WITH RESPECT TO PIP POLICIES ISSUED AFTER JANUARY 1, 2008, MAY THE INSURER COMPUTE PROVIDER REIMBURSEMENTS BASED ON THE FEE SCHEDULES IDENTIFIED IN SECTION 627.736(5)(a), FLORIDA STATUTES, EVEN IF THE POLICY DOES NOT CONTAIN A PROVISION SPECIFICALLY ELECTING THOSE SCHEDULES RATHER THAN “REASONABLE MEDICAL ' EXPENSES” COVERAGE BASED ON SECTION 627.736(l)(a)?
Final judgment affirmed; question of great public importance certified.
SUAREZ and ROTHENBERG, JJ., concur.

. See, e.g., Geico Indem. Co. v. Virtual Imaging Servs., Inc., 79 So.3d 55 (Fla. 3d DCA 2011), and MGA Ins. Co. v. All X-Ray Diagnostic Servs., Case No. 3D12-414, 2012 WL 1150475 (order denying certiorari entered Feb. 27, 2012).

.In certifying this question to us in the order below, the county court judge relied upon the Department of Highway Safety and Motor Vehicles estimates.

. In this case, the insurer’s petition for certio-rari was denied in an unreported order.

. See, e.g., DCI MRI, Inc. v. Geico Indem. Co., 79 So.3d 840 (Fla. 4th DCA 2012).