PARIENTE, J.
The issue presented to the Court is whether the Medicare fee schedules set forth in section 627.736(5)(a), Florida Statutes (2008), authorized an insurer to limit reimbursements for medical services rendered to an insured without giving notice in the insurance policy of the insurer’s election to use the Medicare fee schedules as the basis for calculating reimbursements.[1] In Geico General Insurance Co. v. Virtual Imaging Services, Inc. (“Virtual II”), 90 So.3d 321, 322-23 (Fla. 3d DCA 2012), the Third District Court of Appeal answered this question in the negative, concluding that the insurer, GEICO General Insurance Company, could not limit reimbursements without providing notice through an election in its policy. The Third District’s conclusion was consistent with the holdings of three previous district court of appeal cases that addressed the same issue. See DCI MRI, Inc. v. Geico Indem. Co., 79 So.3d 840, 842 (Fla. 4th DCA 2012); Geico Indem. Co. v. Virtual Imaging Servs., Inc. (“Virtual I”), 79 So.3d 55, 58 (Fla. 3d DCA 2011); Kingsway Amigo Ins. Co. v. Ocean Health, Inc., 63 So.3d 63, 67 (Fla. 4th DCA 2011).
Because the Third District determined that this issue was recurring statewide with respect to personal injury protection (PIP) policies issued after January 1, 2008, the district court certified a question of great public importance to this Court.[2] *150 We rephrase the certified question[3] as follows:
WITH RESPECT TO PIP POLICIES ISSUED AFTER JANUARY 1, 2008, MAY AN INSURER LIMIT REIMBURSEMENTS BASED ON THE MEDICARE FEE SCHEDULES IDENTIFIED IN SECTION 627.736(5)(a), FLORIDA STATUTES, WITHOUT PROVIDING NOTICE IN ITS POLICY OF AN ELECTION TO USE THE MEDICARE FEE SCHEDULES AS THE BASIS FOR CALCULATING REIMBURSEMENTS?
We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
For the reasons more fully explained below, we agree with all of the appellate court decisions that have addressed this issue, and we therefore answer the rephrased certified question in the negative. We conclude that notice to the insured, through an election in the policy, is necessary because the PIP statute, section 627.736, requires the insurer to pay for “reasonable expenses ... for medically necessary ... services,” § 627.736(l)(a), Fla. Stat., but merely permits the insurer to use the Medicare fee schedules as a basis for limiting reimbursements, see § 627.736(5)(a)2., Fla. Stat. In other words, the PIP statute provides that the Medicare fee schedules are one possible method of calculating reimbursements to satisfy the PIP statute’s reasonable medical expenses coverage mandate, but does not provide that they are the only method of doing so.
Accordingly, we conclude that the insurer was required to give notice to its insured by electing the permissive Medicare fee schedules in its policy before taking advantage of the Medicare fee schedule methodology to limit reimbursements. We therefore approve the result of the Third District’s decision in Virtual II and approve the district court decisions in Kings-way, Virtual I, and DCI MRI to the extent those decisions are consistent with our analysis. Because the GEICO policy has since been amended to include an election of the Medicare fee schedules as the method of calculating reimbursements, and the Legislature has now specifically incorporated a notice requirement into the PIP statute, effective July 1, 2012, see § 627.736(5)(a)5., Fla. Stat. (2012),[4] our holding applies only to policies that were in effect from the effective date of the 2008 amendments to the PIP statute that first provided for the Medicare fee schedule methodology, which was January 1, 2008, through the effective date of the 2012 amendment, which was July 1, 2012.
FACTS AND BACKGROUND
This case arises out of a motor vehicle accident that occurred on September 4, 2008. As a result of injuries sustained in the accident, the insured sought medical services, in the form of two MRIs, from *151 Virtual Imaging Services, Inc., on October 6, 2008. Virtual Imaging rendered the health care services to the insured and obtained an assignment of PIP benefits under the insured’s policy with GEICO.
The relevant portions of the GEICO insurance policy at issue provide that GEI-CO will make payments as follows:
Under Personal Injury Protection, the Company [GEICO] will pay, in accordance with, and subject to the terms, conditions, and exclusions of the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:
(a) 80% of medical expenses; and
(b) 60% of work loss; and
(c) Replacement services expenses; and
(d) Death benefits.
The above benefits will be provided for injuries incurred as a result of bodily injury, caused by an accident arising out of the ownership, maintenance or use of a motor vehicle and sustained by:
(1) You or any relative while occupying a motor vehicle or, while a pedestrian through being struck by a motor vehicle; or
(2) Any other person while occupying the insured motor vehicle or, while a pedestrian, through being struck by the insured motor vehicle.
The policy defines the term “medical expenses ” to mean “reasonable expenses for medically necessary medical, surgical, x-ray, dental, ambulance, hospital, professional nursing and rehabilitative services for prosthetic devices and for necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person.”
Virtual Imaging billed GEICO $3600 for the two MRIs it provided to the insured. GEICO has stipulated that the MRIs were medically necessary, related to the accident, and covered as PIP benefits under the terms of the insured’s policy with GEI-CO. GEICO has also agreed, in this case, not to challenge Virtual Imaging’s claim that its $3600 charge for the MRIs was reasonable. Additionally, there is no dispute that Virtual Imaging submitted the charges to GEICO in a timely manner and that all statutory and contractual prerequisites for payment were met.
In response to the $3600 charges submitted by Virtual Imaging, GEICO paid the bill on December 14, 2008, but limited its reimbursement to eighty percent of 200% of the applicable Medicare fee schedule, in accordance with the formula described in section 627.736(5)(a), Florida Statutes, which provides as follows:
1. Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered ....
2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
[[Image here]]
f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare PartB.
§ 627.736(5)(a), Fla. Stat. (2008) (emphasis supplied). This statutory provision permitting GEICO and other insurers to limit reimbursements based on the Medicare fee schedules was passed by the Legislature in 2007 and became effective, in its initial form, on January 1, 2008, as part of Florida’s PIP statute. See ch.2007-324, § 20, *152 Laws of Fla.[5] The Florida PIP statute is part of the broader Florida Motor Vehicle No-Fault Law, sections 627.730-627.7405, Florida Statutes (2008).
Virtual Imaging, as the assignee of PIP benefits under the insured’s policy, subsequently sued GEICO in county court, alleging that GEICO’s reimbursement was insufficient and failed to satisfy the full amount of PIP insurance benefits due to Virtual Imaging under its assignment of benefits in the insured’s policy. After the parties stipulated to the basic facts and filed cross motions for summary judgment, the county court issued an order granting Virtual Imaging’s motion for final summary judgment and certifying the following question to the Third District:
MAY AN INSURER LIMIT PROVIDER REIMBURSEMENT TO 80% OF THE SCHEDULE OF MAXIMUM CHARGES DESCRIBED IN F.S. 627.736(5)(a) IF ITS POLICY DOES NOT MAKE A SPECIFIC ELECTION TO DO SO?
On appeal and in reliance on its previous decision in Virtual I, the Third District affirmed the county court’s order. Virtual II, 90 So.3d at 323-24. The Third District then certified a question of great public importance to this Court regarding an insurer’s ability to limit reimbursements for medical services based on the Medicare fee schedules for PIP policies issued after January 1, 2008, absent notice to the insured through a specific election of the Medicare fee schedules in the policy. Id. at 324.
ANALYSIS
We begin our analysis with an overview of the history of Florida’s PIP statute. Then, with this background established, we turn to a closer examination of the 2008 amendments to the PIP statute and determine what effect those amendments had on an insurer’s ability to limit reimbursements. Finally, we address the insurance policy governing this case. Because the question presented requires this Court to interpret provisions of the Florida Motor Vehicle No-Fault Law — specifically, the PIP statute — as well as to interpret the insurance policy, our standard of review is de novo. Allstate Ins. Co. v. Holy Cross Hosp., Inc., 961 So.2d 328, 331 (Fla.2007); Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241, 1246 (Fla.2008).
The PIP Statute
The 2008 amendments to the PIP statute, portions of which are the focus of this case, represent another revision in a series of legislative changes to Florida’s statutory no-fault insurance scheme. In 1971, the Florida Legislature enacted the no-fault scheme, including the PIP statute. ■ See ch. 71-252, §§ 1, 7, Laws of Fla. Since the PIP statute was first enacted in 1971, the Legislature has amended the statute numerous times, including every year between 1987 and 1999, and again every year between 2003 and 2009.
The No-Fault Law’s stated purpose is “to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits.” See § 627.731, Fla. Stat. (2008). The PIP statute, codified in section 627.736, is “an integral part of the no-fault statutory scheme.” Flores v. Allstate Ins. *153 Co., 819 So.2d 740, 744 (Fla.2002). This statutory provision “requires motor vehicle insurance policies issued in Florida to provide PIP benefits for bodily injury ‘arising out of the ownership, maintenance, or use of a motor vehicle.’ ” Holy Cross, 961 So.2d at 332 (quoting § 627.736(1), Fla. Stat. (2006)). “The PIP statute is unique, in that it abolished ‘a traditional common-law right by limiting the recovery available to car accident victims’ and in exchange, required PIP insurance that was recoverable without regard to fault.” Id. (quoting State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So.2d 1067, 1077 (Fla.2006)). “Without a doubt, the purpose of the no-fault statutory scheme is to ‘provide swift and virtually automatic payment so that the injured insured may get on with his [or her] life without undue financial interruption.’ ” Ivey v. Allstate Ins. Co., 774 So.2d 679, 683-84 (Fla.2000) (quoting Gov’t Emps. Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)).
Since its inception in 1971, the PIP statute has required insurers to provide coverage for reasonable expenses for necessary medical services. See § 627.736(l)(a), Fla. Stat. (1971).[6] The provision in the PIP statute authorizing insurers to limit reimbursements for medical services rendered pursuant to the Medicare fee schedules, which is at issue in this case, has its genesis in a series of changes the Legislature made to the PIP statute, beginning in 2001, that were designed to regulate the amount providers could charge PIP insurers and policyholders for the medically necessary services PIP insurers are required to reimburse.
For example, in 2001, the Legislature instituted specific fee schedules for determining the amount a provider could bill an insurer for certain services, such as MRIs. See ch.2001-271, § 6, Laws of Fla. In particular, as part of its 2001 amendments to the PIP statute, the Legislature enacted a fee schedule stating that, beginning November 1, 2001, “allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 175 percent of the allowable amount under Medicare Part B.” § 627.736(5)(b)5., Fla. Stat. (2001) (emphasis supplied).[7]
Subsequently, in 2003, the Legislature provided that the PIP statute would sunset, or automatically terminate, effective October 1, 2007, unless the provisions were reenacted. See ch.2003-411, § 19, Laws of Fla. During the 2007 legislative session, the Legislature revived and readopted the PIP statute, effective January 1, 2008. See ch.2007-324, § 13, Laws of Fla. The MRI-specific fee schedule language referenced above was in effect until the Legislature’s 2008 amendments to the PIP statute, which were adopted during the 2007 legislative session in which the PIP statute was revived. The 2008 amendments removed this MRI-specific language, replacing it with a more general provision permitting insurers to limit reimbursement for medical services beginning January 1, 2008, in accordance with the Medicare fee schedules.
The 2008 amendments provided, in part, more specific guidelines regarding a PIP insurer’s ability to limit reimbursements. *154 Specifically, these provisions provided that insurers “may limit reimbursement” to eighty percent of a schedule of maximum charges set forth in the PIP statute. § 627.786(5)(a)2., Fla. Stat. (2008) (emphasis supplied). For emergency services and care provided by a licensed hospital, for instance, the 2008 amendments provided that an insurer could limit reimbursement to “75 percent of the hospital’s usual and customary charges.” § 627.736(5)(a)2.b., Fla. Stat. (2008). With respect to other medical services and care, such as the MRIs that are the focus of this case, the 2008 amendments provided that an insurer “may limit reimbursement” in accordance with the Medicare fee schedules. See § 627.736(5)(a)2.f., Fla. Stat. (emphasis supplied).
In addition, after the dispute over the 2008 amendments arose, the Legislature amended the PIP statute to include a specific requirement that insurers notify their policyholders at the time of issuance or renewal of the insurer’s election to limit payment pursuant to the fee schedules set forth in the PIP statute. This 2012 amendment provided as follows:
Effective July 1, 2012, an insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph. A policy form approved by the office satisfies this requirement. If a provider submits a charge for an amount less than the amount allowed under subparagraph 1., the insurer may pay the amount of the charge submitted.
§ 627.736(5)(a)5., Fla. Stat. (2012) (emphasis supplied). We turn next to a closer examination of the effect of the 2008 amendments on an insurer’s ability to limit reimbursements prior to the Legislature’s 2012 amendment.
The 2008 Amendments
“As always, legislative intent is the polestar that guides a court’s inquiry under the No-Fault Law,” including the PIP statute. Holy Cross, 961 So.2d at 334. “Such intent is derived primarily from the language of the statute.” Id. “Where the wording of the Law is clear and amenable to a logical and reasonable interpretation, a court is without power to diverge from the intent of the Legislature as expressed in the plain language of the Law.” United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 85 (Fla.2001).
The PIP statute requires — and has required since its inception — insurers to provide coverage for reasonable expenses for necessary medical services. In this respect, the 2008 statute provided in pertinent part as follows:
(1) Required benefits. — Every insurance policy complying with the security requirements of s.627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a self-propelled vehicle, subject to the provisions of subsection (2) and paragraph (4)(e), to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:
(a) Medical benefits. — Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically neces *155 sary ambulance, hospital, and nursing services.
§ 627.736, Fla. Stat. (2008) (emphasis supplied). Accordingly, the PIP statute sets forth a basic coverage mandate: every PIP insurer is required to — that is, the insurer “shall” — reimburse eighty percent of reasonable expenses for medically necessary services. This provision is the heart of the PIP statute’s coverage requirements. The question raised in a PIP dispute therefore often becomes how the insurer and the medical services provider will determine what constitutes a reasonable expense.
On this point, the 2008 PIP statute, as amended and effective July 1, 2008, provided as follows:
(5) Charges for treatment of injured persons.—
(a) 1. Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment, if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. In no event, however, may such a charge be in excess of the amount the person or institution customarily charges for like services or supplies. With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.
2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
[[Image here]]
f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B, the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers’ compensation, as determined under s.440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers’ compensation is not required to be reimbursed by the insurer.
§ 627.736, Fla. Stat. (2008) (emphasis supplied). Accordingly, in determining whether a provider’s charge for a particular service is reasonable, “consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community,” as well as “various federal and state medical fee schedules” and “other information relevant to the reasonableness of the reimbursement.” § 627.736(5)(a)l., Fla. Stat. In other words, pursuant to subsection (5)(a)l. of the PIP statute, reasonable *156 ness is a fact-dependent inquiry determined by consideration of various factors.
Subsection (5)(a)2. of the statute, however, provides an alternative mechanism for determining reasonableness: by reference to the Medicare fee schedules. This provision, adopted in the 2008 amendments, states that an insurer “may limit reimbursement” for certain services rendered, such as MRIs, to “200 percent of the allowable amount under the participating physicians schedule of Medicare Part B.” § 627.736(5)(a)2.f., Fla. Stat. (emphasis supplied). The dispute in this case centers around GEICO’s reliance on subsection (5)(a)2. to limit reimbursements without providing notice in its policy of its election to do so.
Specifically, GEICO takes the position that, pursuant to the 2008 amendments to the PIP statute, it was permitted to limit reimbursements in accordance with the Medicare fee schedules because the Medicare fee schedules represent the Legislature’s determination, consistent with the cost-cutting intent of the 2008 amendments, of the proper way to determine the reasonableness of a medical expense. In other words, GEICO contends that there are not two methodologies for determining reasonableness. Four district courts of appeal cases, however, have all concluded the opposite; that is, that there are two methodologies. See Virtual II, 90 So.3d at 323; DCIMRI, 79 So.3d at 842; Virtual I, 79 So.3d at 57-58; Kingsway, 63 So.3d at 67. We agree with the district court decisions in this line of cases and conclude that the 2008 amendments provided an alternative, permissive way for an insurer to calculate reimbursements to satisfy the PIP statute’s reasonable medical expenses coverage mandate, but did not set forth the only methodology for doing so.
The 2008 fee schedule amendments used the word “may” to describe an insurer’s ability to limit reimbursements based on the Medicare fee schedules. See § 627.736(5)(a)2., Fla. Stat. As the Third District observed in Virtual I, if an insurer is not required to use the Medicare fee schedules as a method of calculating reimbursements, the insurer must have “recourse to some alternative means for determining a reimbursement amount” if it chooses not to use the Medicare fee schedules. Virtual I, 79 So.3d at 58; see also Kingsway, 63 So.3d at 67 (stating that the 2008 amendments plainly allow an insurer “to choose between two different payment calculation methodology options” based on the Legislature’s use of the word “may,” which “indicates that this option choice is not mandatory”).
This alternative calculation mechanism is the same mechanism that was in place before the Legislature amended the PIP statute to incorporate the Medicare fee schedules: in the event of a dispute, a fact-finder must determine whether the amount billed was reasonable. The permissive language of the 2008 amendments, therefore, plainly demonstrates that there are two different methodologies for calculating reimbursements to satisfy the PIP statute’s reasonable medical expenses coverage mandate. See Kingsway, 63 So.3d at 67.
Further, the language used by the Legislature in the 2008 amendments differed from the language in the 2001 MRI-specific amendments to the PIP statute, in effect from November 1, 2001, until the PIP statute sunsetted on October 1, 2007. The MRI-specific language, as amended in 2003, provided that “allowable amounts that may be charged to a personal injury protection insurance insurer and insured for magnetic resonance imaging services shall not exceed 175 percent of the allowable amount under the participating physician fee schedule of Medicare Part B.” *157 § 627.736(5)(b)5., Fla. Stat. (2003) (emphasis supplied). In contrast to this MRI-specific language, the Legislature did not state in the 2008 amendments that a provider’s charge “shall not exceed” a certain allowable amount of the Medicare fee schedules. Instead, the Legislature specifically used the word “may” to reference an insurer’s ability to limit reimbursement.
Accordingly, we conclude that the 2008 amendments were clearly permissive and offered insurers a choice in dealing with their insureds as to whether to limit reimbursements based on the Medicare fee schedules or whether to continue to determine the reasonableness of provider charges for necessary medical services rendered to a PIP insured based on the factors enumerated in section 627.736(5)(a)l. In other words, we do not conclude that payment under section 627.736(5)(a)2. could never satisfy the PIP statute’s basic “reasonable expenses” coverage mandate, set forth in section 627.736(1).[8] Instead, what we conclude is that the fee schedule payment calculation methodology in section 627.736(5)(a)2. was permissive. Indeed, GEICO does not contest the conclusion that the PIP statute provided a permissive method of reimbursement.
Rather, GEICO primarily argues that its policy incorporated the PIP statute, and therefore it had no separate obligation to notify its insureds in the policy of its intention to limit reimbursements in accordance with the statutorily authorized Medicare fee schedules. Because this argument requires an interplay between the statutory scheme and the policy, we turn next to an analysis of the policy provisions.
The Policy
When “interpreting an insurance contract,” this Court is “bound by the plain meaning of the contract’s text.” State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So.3d 566, 569 (Fla.2011). “If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written.” Id. at 569-70 (quoting Travelers Indem. Co. v. PCR, Inc., 889 So.2d 779, 785 (Fla.2004)); see also U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 877 (Fla.2007) (stating that insurance contracts are construed according to their plain meaning). Further, in order for an exclusion or limitation in a policy to be enforceable, the insurer must clearly and unambiguously draft a policy provision to achieve that result. See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 36 (Fla.2000).
The applicable policy provisions in this case provide that GEICO will make payments as follows:
Under Personal Injury Protection, the Company [GEICO] will pay, in accordance with, and subject to the terms, conditions, and exclusions of the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:
(a) 80% of medical expenses; and
(b) 60% of work loss; and
*158 (c) Replacement services expenses; and
(d) Death benefits.
The GEICO policy does not include any reference to the Medicare fee schedules, but simply states that GEICO will pay “80% of medical expenses,” which it defines as “reasonable expenses for medically necessary ... services.”
We conclude that because the policy did not reference the permissive Medicare fee schedule method of calculating reasonable medical expenses, GEICO was not permitted to limit reimbursements in accordance with the Medicare fee schedules.[9] As the Kingsway Court explained, when the plain language of the PIP statute affords insurers two different mechanisms for calculating reimbursements, the insurer must clearly and unambiguously elect the permissive payment methodology in order to rely on it. See Kingsway, 63 So.3d at 67-68.
This is because a policy election gives notice to the insured — and to the provider who renders service based on an assignment of benefits in the insured’s policy— regarding the amount of PIP coverage the insurer will provide. Judge Gross cogently articulated this reasoning in Kingsway as follows:
The applicable policy made no reference to the permissive methodology of subsection 627.736(5)(a)2. The policy cites the No-Fault Act, states it will pay “80% of medical expenses,” and defines medical expenses as those that it is required to pay “that are reasonable expenses for medically necessary ... services.” That is the language of subsection 627.736(l)(a), which is amplified by subsection 627.736(5)(a)l. The policy does not say it will pay 80% of 200% of Medicare Part B Schedule as provided in subsection 627.736(5)(a)2.
We reject [the insurer’s] argument that, because the PIP statute is incorporated into the policy, it had the unilateral right to ignore the only payment methodology referenced in the policy. Similar reasoning was rejected by the fifth district in State Farm Florida Insurance Co. v. Nichols, 21 So.3d 904 (Fla. 5th DCA 2009), a case involving a claim under a homeowner’s policy.
Id. at 67.
Based on the reasoning explained in Kingsway, we reject GEICO’s argument that it was permitted to calculate reimbursements in accordance with the Medicare fee schedules because the 2008 amendments were incorporated into its policy. GEICO offers two rationales in support of its incorporation argument. First, GEICO contends that the fee schedules were incorporated in its policy through reference in the policy itself, which states that reimbursements will be made “in accordance with the Florida Motor Vehicle No-Fault Law, as amended.” Second, GEICO contends - that the 2008 amendments were incorporated by law into the policy through section 627.7407(2), which provides as follows:
Any personal injury protection policy in effect on or after January 1, 2008, shall be deemed to incorporate the provisions of the Florida Motor Vehicle No-Fault Law, as revived and amended by this act.
§ 627.7407(2), Fla. Stat. (2008).
We disagree and adopt the reasoning set forth by the Fourth District in Kingsway. Because the fee schedule provision of sec *159 tion 627.736(5)(a)2.f. is permissive and not mandatory, and because the Medicare fee schedules are not the only mechanism for calculating reimbursements, we conclude that neither section 627.7404(2) nor the policy’s incorporation of the PIP statute alters the fact that the insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insured by electing those fee schedules in its policy. In other words, the Medicare fee schedules set forth in section 627.736(5)(a)2. provide an option for insurers, not the method of how the insurer exercises this option. In order to exercise the option, the insurer must provide notice in the policy of its election to use the fee schedules.
Subsection 5 of section 627.736(5)(a), Florida Statutes (2008), further supports this conclusion. That provision of the PIP statute states as follows:
If an insurer limits payment as authorized by subparagraph 2. [setting forth the fee schedules], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured’s personal injury protection coverage due to the coinsurance amount or maximum policy limits.
§ 627.736(5)(a)5., Fla. Stat. (2008) (emphasis supplied). The Legislature’s use of the conditional word “[i]f” in this statutory provision to describe an insurer’s ability to limit reimbursements in accordance with the Medicare fee schedules indicates that an insurer is not required to use those schedules. As the Fourth District explained in Kingsway, 63 So.3d at 67, the language in section 627.736(5)(a)5. “anticipates that an insurer will make a choice.” Accordingly, even if the Medicare fee schedules are incorporated into the insured’s policy, neither the insured nor the provider knows, without the policy providing notice by electing the Medicare fee schedules, that the insurer will limit reimbursements.
Finally, we reject GEICO’s reliance on this Court’s decision in Holy Cross, 961 So.2d at 335, as support for its argument that it could limit reimbursements without providing notice through an election in its policy. In Holy Cross, this Court held that an insurer could, consistent with the PIP statute, reimburse PIP benefits at a reduced rate where the medical provider contractually agreed to accept the reduced payment. Id. at 336. In other words, our holding in Holy Cross was premised on the existence of an agreement between the insurer and the medical provider in that case. Id.
Contrary to the argument advanced by GEICO, Holy Cross does not stand for the proposition that notice is not required in the policy. Instead, Holy Cross merely indicates one particular way an insurer can limit reimbursements: by entering into a contract with the provider. As we stated in that case, “the effect of such contractual agreements would be to predetermine what constitutes a ‘reasonable expense’ for a covered service.” Id.
There is no such agreement to predetermine the amount of reimbursement in this case. Unlike in Holy Cross, GEICO did not indicate in any way in its policy that it intended to limit its reimbursement to a predetermined amount of set reasonable medical expenses. As the Florida Medical Association (FMA) pointed out in its ami-cus curiae brief filed with this Court, this is of particular concern to health care providers, who render services to PIP insureds in reliance on the terms of the insured’s policy. Further, as the FMA also noted, GEICO’s justification for its decision to reimburse at reduced rates *160 without providing notice of this election in its policy — that such reduced reimbursement rates are in the best interests of the insured — ignores the fact that the provider also needs notice of the reimbursement rate because it is the provider who is forced to accept the lower payment rate after rendering services in reliance on the terms of the policy.
CONCLUSION
For the reasons expressed above, we hold that under the 2008 amendments to the PIP statute, a PIP insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insured by electing those fee schedules in its policy. Because the policy in this ease did not reference the permissive method of calculation based on the Medicare fee schedules, GEICO could not limit its reimbursement based on those fee schedules. Accordingly, we adopt the reasoning of the Fourth District in Kingsway, answer the rephrased certified question in the negative, approve the result of the Third District’s decision in Virtual II, and approve the district court decisions in Kingsway, Virtual I, and DCI MRI to the extent those decisions are consistent with this opinion.
It is so ordered.
QUINCE, LEWIS, LABARGA, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

. The following organizations filed amicus curiae briefs in support of the Petitioner, GEICO General Insurance Company: the American Insurance Association and Property Casualty Insurers Association of America (trade organizations that represent insurers); the Florida Justice Reform Institute (an advocacy organization that supports tort reform); and Personal Insurance Federation of Florida and the National Association of Mutual Insurance Companies (a nonprofit coalition of insurers and a trade organization that represents insurers, respectively). In addition, the following organizations filed amicus curiae briefs in support of the Respondent, Virtual Imaging Services, Inc.: the Florida Medical Association (a nonprofit coalition of physicians); Floridians for Fair Insurance, Inc. (an advocacy organization for insurance consumers); Gables Insurance Recovery, Inc. (a business entity that collects insurance benefits on behalf of health care providers); and MRI Associates of St. Pete, Inc. (a health care services provider).

. The question certified by the Third District was as follows:
WITH RESPECT TO PIP POLICIES ISSUED AFTER JANUARY 1, 2008, MAY THE INSURER COMPUTE PROVIDER REIMBURSEMENTS BASED ON THE FEE SCHEDULES IDENTIFIED IN SECTION 627.736(5)(a), FLORIDA STATUTES, *150 EVEN IF THE POLICY DOES NOT CONTAIN A PROVISION SPECIFICALLY ELECTING THOSE SCHEDULES RATHER THAN "REASONABLE MEDICAL EXPENSES” COVERAGE BASED ON SECTION 627.736(l)(a)?
Virtual II, 90 So.3d at 324.

. We rephrase the certified question because the specific legal issue in this case is not whether an insurer can compute reimbursements based on the Medicare fee schedules “rather than " provide "reasonable medical expenses" coverage, as the question certified by the Third District frames the issue, but whether the insurer can use the Medicare fee schedules as a method for calculating the "reasonable medical expenses” coverage the insurer is required by section 627.736 to provide, when the policy does not provide notice of the insurer’s election to use the fee schedules.

. See ch.2012-197, § 10, Laws of Fla.

. The Legislature subsequently amended section 627.736(5)(a)2.f. to change the phrase “200 percent of the applicable Medicare Part B fee schedule” to the phrase "200 percent of the allowable amount under the participating physicians schedule of Medicare Part B.” See ch.2008-220, § 22, Laws of Fla. The latter version is the applicable version in effect in this case.

. In 1977, the Legislature amended the medical benefits coverage provided by the PIP statute from "all reasonable expenses" to "[e]ighty percent of all reasonable expenses.” See ch. 77-468, § 33, Laws of Fla. The eighty percent language remains in effect today.

. In 2003, the Legislature amended the phrase "175 percent of the allowable amount under Medicare Part B” to read "175 percent of the allowable amount under the participating physician fee schedule of Medicare Part B.” See ch.2003-411, § 8, Laws of Fla.

. In Allstate Fire & Casualty Insurance Co. v. Perez ex rel. Jeffrey Tedder, M.D., P.A., 111 So.3d 960, 962 (Fla. 2d DCA 2013), the Second District Court of Appeal characterized the fee schedule amendments as allowing an insurer to “either pay reasonable medical expenses as provided in subsection (5)(a)(1), or ... limit reimbursement according to the parameters of subsection (5)(a)(2).” Although we agree that there are two payment methodologies for satisfying the PIP statute’s coverage mandate, we emphasize that we do not conclude that limiting reimbursement pursuant to section 627.736(5)(a)2. would never satisfy this reasonable medical expenses coverage mandate. In fact, that is the very reason we rephrased the certified question in this case. See supra note 3.

. We reject Virtual Imaging's argument, however, that section 627.6044, Florida Statutes (2008), is relevant to our analysis in this case. Section 627.6044 is not part of the Florida Motor Vehicle No-Fault Law and does not apply to PIP insurance.