MAY, J.,
dissenting.
I respectfully dissent. For me, this issue was correctly decided in Allstate Fire & Casualty Insurance v. Stand-Up MRI *30 of Tallahassee, — So.3d -, 2015 WL 1223701, 40 Fla. L. Weekly D693 (Fla. 1st DCA Mar. 18, 2015), and South Florida Wellness, Inc. v. Allstate Insurance Co., 89 F.Supp.3d 1338, 2015 WL 897201 (S.D.Fla. 2015). Both courts encountered the same insurer and the same policy language. Without struggling to create an ambiguity, the First District held “that Allstate’s policy language gave legally sufficient notice to its insureds of its election to use the Medicare fee schedules as required by Virtual Imaging.” Id. at -, 2015 WL 1223701, at *3. And as Judge Dimitrouleas found, “the relevant language unambiguously provides notice of Allstate’s election to use the Subsection 5(a)(2) fee schedule method.” S. Fla. Wellness, Inc., 89 F.Supp.3d at 1342, 2015 WL 897201, at *4. I agree with the conclusions reached by both courts and would affirm.
As Judge Osterhaus noted: “The crux of the PIP dispute here concerns whether Allstate’s policy language adequately notifies insureds of its election to limit reimbursements via the Medicare fee schedules in § 627.736(5)(a)2., as required by Virtual Imaging.” Id. The First District’s conclusion “stem[med] from the policy’s plain statement that reimbursements ‘shall’ be subject to the limitations in § 627.736, including ‘all fee schedules.’ ” Id. That is precisely what Allstate has done here. It has placed the insured on notice that reimbursements are subject to the Medicare fee schedule-based limitation set forth in the PIP statute. There is nothing ambiguous in the policy’s language.
Unfortunately, the providers have led the majority down the yellow brick road. The issue is not whether the policy is ambiguous, but rather whether the policy adequately put the insured on notice of the insurer’s election to limit reimbursements according to the Medicare fee schedules set forth in section 627.736. See Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc. (Virtual Imaging), 141 So.3d 147, 149-59 (Fla.2013). Instead of simply reading the policy’s plain language for what it says, the majority spends fourteen pages trying to convince the reader that an ambiguity exists.
After all, let’s remember the purpose of PIP coverage. “[T]he purpose of the no-fault statutory scheme is to provide swift and -virtually automatic payment so that the injured insured may get on with his [or her] life without undue financial interruption.” Id. at 153 (second alteration in original) (quoting Ivey v. Allstate Ins. Co., 774 So.2d 679, 683-84 (Fla.2000)) (internal quotation marks omitted). Providers, however, look to get paid as much as possible, but that does not inure to the insured’s benefit. The less costly, the services provided, the more services the insured can receive. While some providers may choose to not treat an insured if their fee is limited to the Medicare fee schedules, that problem is one of the provider’s making, not that of the insurer.
Since its inception, the PIP statute has been the playing field where providers and insurers battle over the meaning of its language. The legislature continues to amend the PIP statute so that it serves the purpose for which it was intended. Indeed, the majority notes the numerous times the PIP statute has been amended. Each time that happens, insurers are required to review their policies and change language. That comes at a cost. And it is the insured that bears that cost.
Yet, time after time, the battle rages on. As the Pope once asked Michelangelo during the painting of the Sistine Chapel: “When will there be an end?”
Our supreme court noted that “[t]he permissive language of the 2008 amendments ... plainly demonstrates that there are two different methodologies for calculating reimbursements to satisfy the PIP statute’s reasonable medical expenses cov *31 erage mandate.” Id. at 156. The majority suggests that the policy must make it “inescapably discernable” what methodology will be used. As the First District articulated, “the language of [Allstate’s] policy makes reimbursements subordinate to the fee schedules in rather unmistakable terms.” Stand-Up MRI of Tallahassee, — So.3d at-, 40 Fla. L. Weekly at D694.
Here, Allstate specifically elected the limitations provided by the Medicare fee schedules and gave notice to the insured that it will pay according to their limitations. In short, the policy language is unambiguous.[5] I would affirm.

. In my view, it is unclear whether Virtual Imaging actually required an election of one of the two methodologies provided by the PIP statute as long as the insured is given notice that it would opt for one of the methodologies provided. That would still not make a policy ambiguous; it would simply allow the insurer discretion in choosing the methodology to be used.