DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUNRISE CHIROPRACTIC AND REHABILITATION CENTER, INC.**
a/a/o Bichenet Louis,
Appellant,

v.

**SECURITY NATIONAL INSURANCE COMPANY,**
Appellee.

No. 4D21-188

[May 19, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Nina W. Di Pietro, Judge; L.T. Case Nos. COCE-17-000830 (49) and CACE-19-001560 (AP).

Christina M. Kalin and John C. Daly of Daly & Barber, P.A., Plantation, for appellant.

No appearance for appellee.

PER CURIAM

This appeal arises out of a county court claim for Personal Injury Protection ("PIP") benefits. Appellant Sunrise, through an assignment of benefits, sought reimbursement for chiropractic care rendered to an individual ("insured") who was covered by an insurance policy with appellee Security National Insurance Company ("insurer"). Insurer used the Centers for Medicare & Medicaid Services' ("CMS") payment files to determine the reimbursement amount. The payment files included a two percent reduction for each unit of chiropractic adjustment based upon the government's recoupment of costs. The trial court granted summary judgment for insurer, holding that insurer's payment to Sunrise, which included the two percent reduction, was proper. We reverse, as we hold insurer is not entitled to the two percent reduction.

Insured was injured in a car accident and sought related and medically necessary treatment for his injuries from Sunrise. The treatment included chiropractic adjustments to the spine, billed under chiropractic treatment code 98941. Insured executed an assignment of benefits to Sunrise, and

Sunrise filed suit for breach of contract alleging that insurer failed to pay all sums due. Insurer answered and alleged in its affirmative defense that Sunrise's bill "was properly reduced per the Medicare and/or Worker's Compensation fee schedule(s), and then paid at 80%, pursuant to the . . . policy . . . and Section 627.736, Florida Statutes." Insurer did not dispute the reasonableness of Sunrise's fees, and Sunrise did not dispute the policy terms. What Sunrise did object to was insurer's reduction of the reimbursement amount for chiropractic adjustments billed under CPT code 98941 by what has become known as "the 2% issue." Under Medicare, for the years 2010 through 2014, chiropractic fees were to be reduced for Medicare claims by two percent to recoup the cost of a study conducted regarding chiropractic fees.

Insurer sought a summary disposition, and Sunrise objected. The central issue before the court was the application of the two percent reduction of the Medicare fee amount. Insurer sought to use the Medicare CMS payment files, which included the two percent reduction, rather than a calculation of the rate based upon the Medicare formula. The trial court ruled in favor of insurer, prompting this appeal.

This issue has been addressed in federal district court. In a well-reasoned opinion, Judge William P. Dimitrouleas held that under section 627.736 the insurer could not reduce payments by the two percent fee. *Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1221 (S.D. Fla. 2018). We adopt his analysis as our own, which we set forth herein:

> This case presents a question of interpretation of the Florida No–Fault ("PIP") Statute, Fla. Stat. § 627.736 (2012 to date).
>
> Fla. Stat. § 627.736 sets forth a basic coverage mandate which requires every PIP insurer to reimburse 80% of reasonable expenses for medical services. *See Geico General Insurance Co. v. Virtual Imaging Services, Inc.*, 141 So. 3d 147, 150 (Fla. 2013). There are two different methodologies permitted under the statute for calculating reimbursements to satisfy the PIP mandate: (1) the "reasonableness is a fact dependent inquiry" methodology prescribed under Florida Statutes subsection § [sic] 627.726(5)(a); and (2) the "schedule of maximum charges" provided under Florida Statutes subsection 627.736(5)(a)1.
>
> Plaintiff does not contest whether Defendant's automobile insurance policy properly elected the "schedule of maximum charges." The parties agree that Progressive is entitled to limit

reimbursement for medical expenses based on the "schedule of maximum charges" contained in Section (5)(a) of the PIP Statute. *See* [sic] Fla. Stat. § 627.736(5)(a). Accordingly, this case is about Defendant's application of the "schedule of maximum charges" to its reimbursements of claims submitted by Plaintiff for chiropractic manipulative treatment services billed under CPT code 98940.

The "schedule of maximum charges" limits payment for the chiropractic services rendered by Plaintiff to "200 percent of the allowable amount under" the "participating physicians fee schedule of Medicare Part B." *See* Fla. Stat. § 627.736(5)(a)1.f.(I). In turn, the Medicare Part B Physicians Fee Schedule (the "Medicare Part B Physicians Fee Schedule" or "PPFS–MPB") prescribes the reimbursement rate for over 7,000 services performed by medical professionals, including the chiropractic medical services that are the subject of this case.

The reimbursement value for services under the PPFS–MPB are calculated by multiplying (1) the relative value of a service; (2) the conversion factor for the particular year; and (3) the geographic adjustment factor applicable to the locality in which the service was provided. *See* 42 U.S.C. § 1395w–4(b)(1). Therefore, using simple arithmetic (addition and multiplication), the reimbursement value for any service, in any part of the United States, for any given year can be easily ascertained by the Defendant using the Medicare Part B Physicians Fee Schedule. The tables of values for the cost factors are published each year in the annual Medicare Physicians Fee Schedule Final Rule and are readily available and easily accessible on the Centers for Medicare and Medicaid ("CMS") website.

The instant dispute arises from Progressive's application of the PPFS–MPB in effect in 2012–2014. During that timeframe, a 2% reduction was imposed on chiropractic services paid for by Medicare in order to recoup costs for a study/demonstration conducted by Brandeis University to evaluate the feasibility of expanding Medicare coverage for certain chiropractic services. *See* 74 Federal Register 61926–61928. The Medicare Prescription Drug, Improvement and Modernization Act of 2003 (hereinafter "MMA") required that the study be "budget neutral;" therefore, the CMS Office of the

3

Actuary ("OACT") established a plan to recoup the outstanding $50 million apportioned to CMS to fund the study by reducing the payment by Medicare for chiropractic fee codes 98940, 98941 and 98942 by two percent (2%) commencing in calendar year 2010 through calendar year 2014. *Id.* OACT estimated that CMS would recoup $10 million per year from 2010 through 2014 by reducing CMS' payment of Medicare claims. *Id.*

The Department of Health and Human Services ("HHS") made it clear that the 2% reduction was only to be applied to Medicare claims:

> Consistent with the proposed rule, for this final rule with comment period, we are reflecting this reduction only in the payment files used by the Medicare contractors to process Medicare claims rather than through adjusting the RVUs. **Avoiding an adjustment to the RVUs would preserve the integrity of the PFS, particularly since many private payers also base payment on the RVUs.**

74 Fed. Reg. 61927 (emphasis added); *see also* 78 Fed. Reg. 74790 (same). The Medicare Physician Fee Schedule ("PFS") Final Rule authored by HHS for each calendar year from 2010 through 2014 reflected in the Federal Register explicitly reasserts the calendar year 2010 PFS policy establishing the reductions for Medicare claims only. *See* 78 Fed. Reg. 74790–74791.

Plaintiff asserts that the Defendant misinterpreted what is the Medicare Part B Physicians Schedule and misapplied the CMS Payment Files instead, which resulted in improper, unauthorized reductions by 2% for each unit of a chiropractic manipulation. The Court agrees. Notwithstanding that no provisions of Fla. Stat. § 627.736(5)(a) 1 nor of the relevant portions of the federal regulations permit private payers, such as Defendant Progressive, to reduce payment to chiropractors treating under chiropractic fee codes 98940, 98941 and 98942 by two percent (2%), Defendant did so during calendar years 2012–2014, resulting in systematic underpayment of its insured's PIP chiropractic claims.

The Court rejects Defendant's argument that it was permitted to use the 2% fee reduction because those values were calculated into the CMS payment files. Regardless of whether it was easier for a private payer to use those values rather than calculate the formula once a year, such reduction is contradicted by the plain language of § 627.736(5)(a) 1, which clearly allows an insurer to limit reimbursement to medical care to the treating chiropractor to "200 percent of the allowable amount under" the "participating physicians fee schedule of Medicare Part B." *See* Fla. Stat. § 627.736(5)(a)1.f.(I). "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984). The Medicare Physician Fee Schedule ("PFS") does not include the two percent (2%) reduction for CPT codes 98940, 98941 or 98942. To the extent that Defendant relied upon the CMS Payment Files to underpay chiropractic claims by 2%, such practice was improper. Additionally, it runs contrary to the stated point of applying the reduction to the payment files rather than the RVU's, so as to preserve the integrity of the RVU's as they are relied upon by many private payers, such as Defendant.

Based upon the foregoing, Defendant could not take advantage of the 2% reduction which was incorporated into the CMS Payment Files to allow Medicare to recoup the cost of a study in order to reduce its payments to Plaintiff.

*Id.* at 1219–21 (footnotes omitted).

For the foregoing reasons, we reverse the judgment and remand for further proceedings.

*Reversed and remanded for further proceedings.*

WARNER, DAMOORGIAN and FORST, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**