# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**SAFECO INSURANCE COMPANY OF ILLINOIS,**
Appellant,

v.

**MD NOW MEDICAL CENTERS, INC.** d/b/a **MD NOW PATIENT** a/a/o
Shelley Holmstock,
Appellee.

No. 4D22-846

_____

**LM GENERAL INSURANCE COMPANY,**
Appellant,

v.

**MD NOW MEDICAL CENTERS, INC.** d/b/a **MD NOW PATIENT** a/a/o
Lisa Lugo,
Appellee.

No. 4D22-847

_____

**LIBERTY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**MD NOW MEDICAL CENTERS, INC.** d/b/a **MD NOW PATIENT** a/a/o
Jack Nguyen,
Appellee.

No. 4D22-1486

[August 2, 2023]

Consolidated appeals from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Reginald R. Corlew, Judge; L.T. Case Nos.

50-2018-SC-022038-XXXX-SBRD, 50-2019-SC-005335-XXXX-SBRD, and 50-2019-SC-011362-XXXX-SBRD.

Jeffrey R. Geldens of Roig Lawyers, Miami, and Abbi Freifeld Carr and Veresa Jones Adams of Roig Lawyers, Deerfield Beach, for appellants.

Douglas H. Stein of Douglas H. Stein, P.A., Coral Gables, for appellees.

KLINGENSMITH, C.J.

In this consolidated appeal from the county court, Safeco Insurance Company of Illinois, LM General Insurance Company, and Liberty Mutual Insurance Company (collectively "Insurers") request reversal of the trial court's order (1) granting summary disposition in favor of MD Now and (2) requiring Insurers to reimburse MD Now for billed urgent care center facility fees under Code S9088.  We find that MD Now's use of that code when billing for its services did not prevent Insurers from reimbursing those charges under their insurance policies, and we affirm.

In each of the three cases presented, the insureds were injured in automobile accidents and later received treatment at MD Now urgent care centers.  Each of the insureds assigned their PIP benefits to MD Now, and MD Now submitted medical bills to the Insurers on the insureds' behalf.  Insurers paid for all medical expenses except the charges for the urgent care facility fee under Code S9088 that MD Now uses to calculate billing charges for services provided in an urgent care center.  Insurers denied payment under Code S9088 claiming it was not a covered expense.  As a result, MD Now sued the Insurers pursuant to Florida Small Claims Rule 7.135 for breach of contract by their refusal to reimburse for those charges.

Each insurer articulated the same arguments and defenses in all three cases, claiming they properly paid the insurance policy benefits as "subject to the terms, conditions, and limitations of [the] policy and Florida Statutes."  Additionally, they averred that in accord with section 627.736(5)(a)(1)(f), Florida Statutes (2020), they were not required to reimburse any charge under Code S9088 as this "procedure code is not reimbursable under [Florida's PIP statute] because it is not reimbursable either under the Medicare or [Florida's Workers' Compensation] Fee Schedules."[1]

---

[1] The parties do not dispute that Code S9088 is not reimbursable under Medicare.

Based on those arguments, Insurers moved for summary judgment supported by an affidavit of an expert—a certified coder—who testified that (1) neither Medicare nor Workers' Compensation have a set fee for Code S9088 but instead use the same rate of compensation for urgent care centers as it does for physicians' offices; and (2) Workers' Compensation reimburses urgent care centers using the non-facility Maximum Reimbursable Amount ("MRA").

In response, MD Now moved for final summary disposition, arguing that contrary to the Insurers' contentions, billings under Code S9088 are reimbursable under Workers' Compensation and the Florida Workers' Compensation Health Care Provider Reimbursement Manual ("the Manual"), a reference guide for MRA reimbursement. MD Now asserted that rather than entirely deny reimbursement for codes like Code S9088 that do not have a set MRA, Insurers are instead required to have an established methodology for determining the amount of that reimbursement.

In support of its motion, MD Now submitted the affidavit of two experts. The first, a billing expert, testified Workers' Compensation insurers had consistently provided reimbursement under Code S9088 in the three years' timeframe before this suit was filed. The second, an expert in Medicare and Workers' Compensation health care billing and coding, explained that Workers' Compensation insurance carriers have routinely used Code S9088 for services provided in urgent care centers since the code became effective in 2002. That expert also confirmed Code S9088 has no established MRA and, thus, is not specifically listed in the Manual. But pointing to the page in the Manual that requires insurers to have a methodology for reimbursing codes without established MRAs, the expert explained insurance carriers must have a reimbursement amount for Code S9088 even though it does not have an MRA.

After a hearing on these competing motions, the trial court granted MD Now's motions for summary disposition and denied Insurers' motions for summary judgment, requiring Insurers to reimburse MD Now for fees charged under Code S9088. This appeal followed.

"[T]he standard of review for an order granting summary disposition is the same standard we use to review an order granting summary judgment: de novo." *Save A Lot Car Rental, Inc. v. Tri J. Co. Towing & Recovery, Inc.*, 325 So. 3d 285, 286–87 (Fla. 2d DCA 2021). "Florida Small Claims Rule 7.135 directs that a trial court must enter a summary disposition at a pretrial conference or subsequent hearing if it determines that there is no triable issue." *Id.* at 286.

"[T]he PIP statute sets forth a basic coverage mandate: every PIP insurer is required to—that is, the insurer 'shall'—reimburse eighty percent of reasonable expenses for medically necessary services." *Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.*, 141 So. 3d 147, 155 (Fla. 2013); *see also* § 627.736(1)(a), Fla. Stat. (2020). The governing PIP statute requires an insurer to provide eighty percent of all reasonable expenses for medically necessary services. § 627.736(1)(a), Fla. Stat. (2020). Section 627.736(5)(a)1.f. allows an insurer to limit reimbursement to eighty percent of the following schedule of maximum charges:

> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
>
> (I) The participating physicians fee schedule of Medicare Part B, except as provided in sub-sub-subparagraphs (II) and (III).
>
> (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.
>
> (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.
>
> However, if such services, supplies, or care is not reimbursable under Medicare Part B, as provided in this sub-subparagraph, **the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers' compensation is not required to be reimbursed by the insurer.**

(Emphasis added).

Therefore, the question presented here is whether, under that governing statute, Code S9088 is a type of service or care which is reimbursable under Workers' Compensation such that an insurer is required to pay those charges. We hold that Code S9088 is properly reimbursable under both the Workers' Compensation statute as well as

4

under the corresponding Administrative Code provisions and related guides.

Sections 440.13(12)–(13), Florida Statutes (2020), create a guide to MRAs and payment of medical fees for Workers' Compensation. Those sections adopt a schedule of MRAs for medically necessary services and establish that "[p]ayment to health care providers or physicians shall be subject to the medical fee schedule . . . ." § 440.13(12)–(13), Fla. Stat. (2020).

In conjunction with section 440.13, Florida Administrative Code Rule 69L-7.020 adopts the Manual that "establishes reimbursement policies, guidelines, codes and MRAs for services provided by health care providers." Fla. Admin. Code R. 69L-7.020. That Manual also serves as a reference for MRAs and further stipulates that if a code has no established MRA, the insurance carrier must have a methodology for determining reimbursement for that code: "Carriers must have an established methodology for determining reimbursement for procedure codes that have no established MRAs" and "will determine reimbursement by comparing the billed procedure code(s)"—in this case Code S9088—"with clinically similar procedure code(s) found in the appropriate CPT or HCPCS Manual." *See* Fla. Workers' Comp. Health Care Provider Reimbursement Manual at 18 (2016 ed.). Even though Code S9088 does not have an established MRA, the plain language of the applicable statutes allows for reimbursement of Code S9088 as long as the services rendered were medically necessary within the meaning of the Workers' Compensation statute as "medical services . . . used to identify or treat an illness or injury." § 440.13(1)(k), Fla. Stat. (2020).

Insurers' contention that Code S9088 is non-reimbursable is incorrect. It is true that Code S9088 has no established MRA and, thus, is not specifically listed in the Manual. Yet not having an established MRA under that Manual does not mean Code S9088 is not reimbursable for services rendered at an urgent care facility. Instead, as the Manual plainly provides, "[c]arriers must have an established methodology for determining reimbursement for procedure codes that have no established MRAs . . . ." Fla. Workers' Comp. Health Care Provider Reimbursement Manual at 18 (2016 ed.). The fact that Code S9088 does not specifically appear in the Manual's list of reimbursable MRA schedules does not mean Code S9088 is not reimbursable *at all*. It only means Code S9088 is calculated differently than an established MRA—that is, calculated in a separate category as a code without an established MRA.

We find Insurers' other arguments claiming they are not responsible for or required to reimburse under Code S9088 to be similarly flawed. First, Insurers assert that a facility code already exists in the schedule which it previously paid. However, the payment of another code does not necessarily mean that this code—Code S9088—cannot also be reimbursed as an additional urgent care facility fee.

Second, Insurers point to a provision in section 440.13(12)(a) of the Workers' Compensation statute to suggest a reimbursement payment can only be the amount of an "agreed-upon contract price or the maximum reimbursement allowance in the appropriate schedule." But rather than limiting which expenses may be reimbursed, the formal adoption of the Manual expanded what reimbursements are allowed by requiring insurers to determine their own reimbursement rate when the code has no MRA or previously agreed-upon contract price.

Finally, Insurers argue their insurance policies prevent them from reimbursing Code S9088 due to their contracts' exclusion of the S-code reimbursement. To reach that conclusion, Insurers rely on an incomplete reading of Florida's PIP statute, focusing solely on the language which excludes reimbursement under both Medicare and Workers' Compensation. Such an interpretation ignores the relevant provisions of the Workers' Compensation statute, the Administrative Code, and the Manual as cited above. *See* Fla. Workers' Comp. Health Care Provider Reimbursement Manual at 18 (2016 ed.). Even if Insurers' policies prevented them from reimbursing S-coded claims, statutory provisions override "[a]ny insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of" Florida's insurance statutes. § 627.418(1), Fla. Stat. (2020). A contract not in compliance is then "applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code." *Id.*

Under a plain reading of the statutes, regulations, and the applicable reference guide provision, reimbursement of Code S9088 is permitted, and we find no error in the trial court's orders granting MD Now's motions for summary disposition and denying Insurers' motions for summary judgment.

*Affirmed.*

GROSS and CIKLIN, JJ., concur.

*        *        *

6

*Not final until disposition of timely filed motion for rehearing.*