DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Appellant,

v.

**CARE WELLNESS CENTER, LLC** a/a/o **VIRGINIA BARDON-DIAZ,**
Appellee.

No. 4D16-2254

[March 14, 2018]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; John D. Fry, Judge; L.T. Case No. CONO 14-7576 (70).

Nancy W. Gregoire of Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, and Scott E. Danner of Kirwan, Spellacy & Danner, P.A., Fort Lauderdale, for appellant.

Marlene S. Reiss of Law Offices of Marlene S. Reiss, Esq., P.A., Miami, Thomas J. Wenzel of Cindy A. Goldstein, P.A., Coral Springs, and Stuart L. Koenigsberg of A Able Advocates–Stuart L. Koenigsberg, P.A., Miami, for appellee.

Peter J. Valeta of Cozen O'Connor, Chicago, Illinois, for Amicus Curiae, Florida Justice Reform Institute.

Matthew C. Scarfone of Colodny Fass, P.A., Sunrise, for Amicus Curiae, Property Casualty Insurers Association of America.

Mac S. Phillips of Phillips|Tadros, P.A., Fort Lauderdale, and David M. Caldevilla of de laParte & Gilbert, P.A., Tampa, for Amicus Curiae, Floridians For Fair Insurance, Inc.

KUNTZ, J.

Application of the deductible when an insured seeks benefits under a personal injury protection (PIP) policy of vehicle insurance is an issue the circuit and county courts have inconsistently resolved. In each case, the healthcare provider argues the deductible must be applied to the total billed charges, before reducing the charges under section 627.736(5)(a)1.,

Florida Statutes (2013), a statutory fee schedule the legislature has found to be reasonable. On the other hand, the insurer argues the billed amount must be reduced to the amount in the approved fee schedule before applying the deductible and issuing payment.

Here, the county court agreed with the provider, granted the provider's motion for summary judgment, and certified the following question to be of great public importance:

> PURSUANT TO FLA. STAT. § 627.739, IS AN INSURER REQUIRED TO APPLY THE DEDUCTIBLE TO 100% OF AN INSURED'S EXPENSES AND LOSSES PRIOR TO APPLYING ANY PERMISSIVE FEE SCHEDULE PAYMENT LIMITATION FOUND IN § 627.736(5)(A)(1), FLA. STAT. (2013)?

We previously exercised our discretionary jurisdiction under Florida Rule of Appellate Procedure 9.030(b)(4)(A) to answer the certified question, which we rephrase as follows:[1]

> PURSUANT TO SECTIONS 627.736 AND 627.739, FLORIDA STATUTES (2013), IS AN INSURER REQUIRED TO APPLY A POLICY DEDUCTIBLE TO THE TOTAL AMOUNT OF A PROVIDER'S INVOICES TO AN INSURED PRIOR TO APPLYING ANY FEE SCHEDULE FOUND IN § 627.736, FLA. STAT.?

For these reasons, we answer the rephrased certified question in the negative. In the context of PIP benefits, the legislature mandates a provider that has treated an injured party charge the "insurer and injured party only a reasonable amount." § 627.736(5)(a), Fla. Stat. (2013). The legislature also established two methods of determining reasonableness; one being the fee schedule. To apply the fee schedule to the billed charges only after applying the deductible, as the provider argues, would allow the provider to recover different amounts depending on the amount of the deductible. It would also allow the provider to recover more than the amount found to be reasonable in the fee schedule. This would render meaningless the portion of the statute precluding a provider from charging more than a reasonable amount.

---

[1] We address the same issue in two other cases decided today. *See also USAA Gen. Indem. Co. v. Gogan, M.D. a/a/o Tara Ricks*, No. 4D16-3313 (Fla. 4th DCA Mar. 14, 2018); *Progressive Select Ins. Co. v. Blum, M.D., P.A. a/a/o Vanesso Moreno*, No. 4D16-4311 (Fla. 4th DCA Mar. 14, 2018)*.

2

To ensure the statute is applied as written, we hold that an insurer must reduce the provider's charges to the statutorily-approved permissive fee schedule *before* applying the deductible. As a result, we reverse the decision of the county court and remand for further proceedings consistent with this opinion. We also certify conflict with the Fifth District in *Progressive Select Insurance Co. v. Florida Hospital Medical Center a/a/o Jonathan Parent*, 43 Fla. L. Weekly D318 (Fla. 5th DCA Feb. 9, 2018). We now turn to a more in-depth discussion of the case before us.

## *Background*

State Farm, the insurer, issued a PIP policy to Ms. Bardon-Diaz, the insured, who elected a $1,000 policy deductible. Following an automobile accident, the insured received medical treatment at Care Wellness Center, the provider, for injuries related to the accident. At that time, the insured executed an assignment of benefits, assigning "any rights or benefits under my policy of insurance with State Farm, for any service and/or charges provided by the above-named medical provider." The assignment also specifically referenced the "status of PIP payments that are due to" the provider.

The insurer received bills for services from all providers totaling $1,812, an amount reduced to $825.96 after the insurer applied the fee schedule. The provider in this appeal submitted three bills to the insurer for the insured's treatment, but the deductible was applied to only two. The total amount billed for the two bills was $385.00 and, after the insurer applied the fee schedule, the two bills were reduced to $258.60. The policy deductible consumed all $258.60.[2]

The provider filed a complaint for breach of contract in county court, alleging that the insured was covered by the vehicle insurance policy and received treatment from the provider. The provider further alleged that the insured "gave notice of covered losses and made demand for PIP benefits from [insurer] for reasonable, necessary, and related medical, rehabilitative and/or remedial treatment." Later, the provider amended its complaint and alleged that the insurer "reduced [the provider's] bill and subsequently applied the reduced amounts to the deductible." The provider's amended complaint stated that the provider "does not dispute that [the insurer's] policy clearly and unambiguously puts its insured on notice of its election to limit reimbursements to the 'permissive' fee

---

[2] The provider also submitted additional invoices for other treatment. State Farm applied the fee schedule to those invoices and, because the deductible had been satisfied, paid the invoices.

schedule rate." The provider also acknowledged the existence of the policy deductible.

The provider challenged the insurer's application of the deductible, alleging "the reduction of [provider's] bills prior to applying said bills to the deductible resulted in an underpayment of [provider's] bills." More specifically, the provider alleged that it "believe[s] that [the insurer] is permitted to limit only reimbursed charges to the 'permissive fee schedule' rate pursuant to the subject policy of insurance" and that the provider "believe[s] that bills that are applied to a deductible are not 'reimbursed' or 'paid.'"

Both parties moved for summary judgment on applying the deductible. After holding a hearing, the court granted the provider's motion for summary judgment. The court later amended the summary judgment order, finding for the provider and certifying the issue as presenting an issue of great public importance.

### *Analysis*

At issue is the proper application of a PIP-claim deductible. Because this involves the interpretation of both a statute and an insurance policy, we have *de novo* review. *See Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.,* 141 So. 3d 147, 152 (Fla. 2013) (citations omitted).

First, we discuss the Florida Motor Vehicle No-Fault Law, *see* §§ 627.730–.7405, Fla. Stat. (2013)—specifically, the PIP statute. Next, we focus on the cornerstone of the PIP statute: reasonableness. Then, we discuss the Fifth District's recent opinion interpreting the same provisions of the statute at issue in this case. Finally, we offer our interpretation of the statute and apply it to this case.

### a. *The PIP Statute*

Florida enacted the PIP statute in 1971. Since its inception, the statute "has required insurers to provide coverage for reasonable expenses for necessary medical services." *Virtual Imaging,* 141 So. 3d at 153. The legislature has amended the statute several times, and these amendments "were designed to regulate the amount providers could charge PIP insurers and policyholders for the medically necessary services PIP insurers are required to reimburse." *Id.*

One of these amendments added a provision that allowed an insurer to limit reimbursements for medical services to a statutory fee schedule,

which the legislature has found to be reasonable. *Id.* (citing § 627.736(5)(a)2., Fla. Stat. (2008) (stating that an "insurer may limit reimbursement to 80 percent of the following schedule of maximum charges," and various categories of service follow with a designated schedule)).[3] For example, the amendment included a provision allowing the insurer to limit reimbursements to "200 percent of the allowable amount under the participating physician's schedule of Medicare Part B." *Id.* at 156 (citing § 627.736(5)(a)2.f., Fla. Stat. (2008)). To use this fee schedule, the insurer must provide notice to the insured within the policy of insurance. *See id.* (citing § 627.736(5)(a)5., Fla. Stat. (2008)).

The parties agree that the insurer properly put the insured on notice of its intent to apply the fee schedule. They also agree on the amount of the applicable deductible. So our issue is narrow. We must determine the proper application of a PIP policy deductible, governed by section 627.739, Florida Statutes, and the PIP benefit statutory section, or section 627.736, Florida Statutes.

To accomplish this task, we first look to the plain language of the PIP deductible statute. The relevant subsection allows the insurer to provide a deductible, and provides the terms of its application:

> Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, and $1,000. The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1). However, this subsection shall not be applied to reduce the amount of any benefits received in accordance with s. 627.736(1)(c).

§ 627.739(2), Fla. Stat. (2013). The dispositive issue in this appeal is to determine what the following phrase means: "the deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736." To determine the meaning of the phrase "expenses and losses," section 627.739(2) must be read along with section 627.736.

Section 627.736 contains several references to "expenses," and each section includes, directly or indirectly, a requirement that the expenses be

---

[3] The relevant provisions cited by our supreme court in *Virtual Imaging* have since been renumbered to section 627.736(5)(a)1. *See* Ch. 2012-197, § 10, Laws of Fla.

reasonable. *See, e.g.,* § 627.736(1)(a), (1)(b), (4), (4)(f), (6)(b), (6)(c), Fla. Stat. To highlight two of those provisions, section 627.736(1)(a) references "reasonable expenses for medical services," and section 627.736(6)(b) requires a provider to furnish a written report stating why the items charged were medically necessary and why the amount charged is reasonable.

### b. *Reasonableness*

Reasonableness is the key throughout these provisions. Yet the providers effectively argue that their charges need to be reasonable only to the insurer, not the insured. We disagree. The requirement that charges be reasonable applies to the totality of the charges. The statute states that the provider "may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered." § 627.736(5)(a), Fla. Stat. (2013). We think the plain language of the statute is clear. The legislature unambiguously emphasized a requirement that expenses be reasonable. We cannot minimize the importance of this reasonableness requirement. Indeed, our supreme court found that "this provision—the reasonable medical expense coverage mandate—is the heart of the PIP statute's coverage requirements." *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 976 (Fla. 2017) (internal quotation omitted).

With reasonableness in mind, courts have stated that a PIP insurer is an "indemnitor against liability for reasonable and necessary medical expenses incurred by persons the PIP or medpay provisions cover." *Kaklamanos v. Allstate Ins. Co.*, 796 So. 2d 555, 561 (Fla. 1st DCA 2001), *approved*, 843 So. 2d 885 (Fla. 2003). The court in *Kaklamanos* defined expense as "the same as a debt," and the expense "has been incurred when liability for payment attaches." *Id.* (citation omitted). So a "reasonable expense" is the amount the insurer must pay, *see, e.g., Tri-Cty. Diagnostic & Imaging Ctrs., LLC v. Windhaven Ins. Co.*, 25 Fla. L. Weekly Supp. 114a (Fla. Palm Beach Cty. Ct. Mar. 14, 2017), and it is the limit a medical provider is entitled to charge, *Northwoods Sports Med. & Physical Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 137 So. 3d 1049, 1057 (Fla. 4th DCA 2014).

As PIP benefits are established only for reasonable charges, we must next review how to determine reasonableness. Our supreme court has explained that there are two different methods to calculate reasonableness. *Orthopedic Specialists*, 212 So. 3d at 976. Under the first method—found within section 627.736(5)(a)—reasonableness is a fact-dependent inquiry determined by considering various factors. *Orthopedic*

*Specialists*, 212 So. 3d at 976 (citing *Virtual Imaging*, 141 So. 3d at 155–56). Under the second method—found within section 627.736(5)(a)1.—an insurer may limit reimbursement to eighty percent of a schedule of maximum charges set forth in the PIP statute. § 627.736(5)(a)2., Fla. Stat. (2013). "Reimbursements made under section 627.736(5)(a)2. satisfy the PIP statute's reasonable medical expenses coverage mandate." *Orthopedic Specialists*, 212 So. 3d at 976 (citing *Virtual Imaging*, 141 So. 3d at 150, 156–57).

Now, returning to the PIP deductible statute, we first note our sister district's interpretation of this section. Then, we offer our interpretation. Again, that section states "the deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736." § 627.739(2), Fla. Stat. (2013).

### c. *The Fifth District's Interpretation of the PIP Deductible Statute*

A divided panel of the Fifth District recently interpreted this same provision of this statute. *Parent*, 43 Fla. L. Weekly at D318.[4] Judge Sawaya's majority opinion agreed with the circuit court's conclusion that "when calculating the amount of PIP benefits due to the insured, section 627.739(2) requires the deductible to be subtracted from the total medical care charges before applying the statutory reimbursement limitations provided in section 627.736(5)(a)1.b., Florida Statutes (2014)." *Parent*, 43 Fla. L. Weekly at D318. As the provider argues here, the majority opinion explained that the current version of the statute distinguishes between "expenses and losses" and "benefits," stating:

---

[4] Prior to our issuance of this opinion, the Fifth District issued this February 9, 2018 opinion on a motion for rehearing and for certification to the Florida Supreme Court. The opinion on rehearing certifies the following question to the Florida Supreme Court:

> WHEN CALCULATING THE AMOUNT OF PIP BENEFITS DUE AN INSURED, DOES SECTION 627.739(2), FLORIDA STATUTES, REQUIRE THAT THE DEDUCTIBLE BE SUBTRACTED FROM THE TOTAL AMOUNT OF MEDICAL CHARGES BEFORE APPLYING THE REIMBURSEMENT LIMITATION UNDER SECTION 627.736(5)(a)1.b., OR MUST THE REIMBURSEMENT LIMITATION BE APPLIED FIRST AND THE DEDUCTIBLE SUBTRACTED FROM THE REMAINING AMOUNT?

*Parent*, 43 Fla. L. Weekly at D322. On the same day it issued the opinion on rehearing in *Parent*, the Fifth District also released an opinion on rehearing in a

> [Section 627.739(2)] distinguishes between "expenses and losses" and "benefits." The second sentence states that the deductible "must be applied to 100 percent of the expenses and losses." In the very next sentence, the statute provides that "[a]fter the deductible is met, each insured is eligible to receive up to $10,000 in total benefits." Thus, the statute indicates that the deductible applies to "100 percent of the expenses and losses" whereas "benefits" refers to the calculated amount after the deductible has been applied to the total expenses and losses and after application of the statutory reimbursement limitations found in section 627.736.

*Id.* at D319.

The majority opinion also cited as persuasive authority a proposed amendment to the statute the legislature did not approve in 2016. *Id.* at 320-21. The majority opinion asserted the proposed amendment would have changed the statute to reflect the view of the insurer. *Id.* We find it unnecessary to consider whether the Fifth District majority or dissent correctly interpreted the language of the proposed amendment. Legislative inaction on a proposed bill "lacks 'persuasive significance' because 'several equally tenable inferences' may be drawn from such inaction, 'including the inference that the existing legislation already incorporated the offered change.'" *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (quoting *United States v. Wise*, 370 U.S. 405, 411 (1962)). Similarly, the Seventh Circuit explained the insignificance of proposed legislation:

> [p]roposed legislation can fail for many reasons. Some Members of Congress may oppose the proposal on the merits; others may think it unnecessary and therefore not worth the political capital needed to write the 'clarification' into the statute over opposition; still others may be indifferent, or seek to use the bill as a vehicle for some unrelated change. Congress may run out of time, as a noncontroversial bill sits in a queue while a contentious proposal is debated. No surprise, therefore, that the Supreme Court repeatedly reminds us that unsuccessful proposals to amend a law, in the years following its passage, carry no significance.

---

second case and certified the same question of great public importance. *See Progressive Select Ins. Co. v. Fla. Hosp. Med. Ctr. a/a/o Louis Pena*, 43 Fla. L. Weekly D322a (Fla. 5th DCA Feb. 9, 2018).

8

*N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 299 (7th Cir. 1992) (internal citations omitted). Whatever the reason the legislature declined to enact the proposed amendment to the statute has no bearing on our interpretation of the statute that it did enact.

Ultimately, the Fifth District concluded "that Section 627.739(2) currently requires that the deductible be applied to 100% of the expenses and losses" and only then may an insurer reduce the billed amount to the amount the legislature has found reasonable. *Id.* at 321.

Judge Palmer dissented, finding the majority incorrectly concluded that "medical expenses" are different than "medical benefits" under the PIP statute. *Id.* at 322 (Palmer, J., dissenting). He found the majority's conclusion that the deductible must be first applied to the billed charge, no matter if the PIP policy covers the charge, "fundamentally unreasonable." *Id.* We find Judge Palmer's position to be more persuasive.

### d. *Our Interpretation of the PIP Deductible Statute and its Application to This Case*

Reading section 627.739(2) along with section 627.736, as the statute expressly requires, the deductible must be applied to 100% of the reasonable and necessary expenses. Consistent with this conclusion, in *Northwoods Sports*, we explained that "in order to activate the right to claim PIP payments . . . the provider's bills must be compensable under the statute in that they have been determined to be reasonable and necessary" and "[u]ntil the necessity of the services and reasonableness of the charges is settled, their compensability under PIP is not established." 137 So. 3d at 1057. In other words, there is no PIP claim until the provider's bill is reduced, if necessary, to the amount set forth in section 627.736(5)(a)1. If there is no PIP claim until the amount is reduced to the amount found to be reasonable by the legislature, then there is nothing to apply the deductible to until the amount is reduced. Because the deductible applies to expenses as described in section 627.736, the deductible is applied to the amounts after the reduction.

This interpretation is also consistent with a general understanding of insurance deductibles. Logically, "the deductible only applies to losses covered under the policy of insurance, not simply the total bills submitted." *Better Chiropractic & Rehab Ctr. LLC v. Geico Indem. Co.*, 22 Fla. L. Weekly Supp. 378b (Fla. Miami-Dade Cty. Ct. Sept. 25, 2014) (citing *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.*, 874 So. 2d 26, 33–34 (Fla. 2d DCA 2004)). As the Second District held in *West Florida Villages*, "[t]he

notion that a deductible could be applied to loss that is not covered by the policy is fundamentally unreasonable."  874 So. 2d at 33.

To apply the deductible to the billed charge irrespective of whether the charge was reasonable—or even covered—would effectively render the deductible meaningless.  The insurer offers the PIP coverage at different premiums depending on the amount of the deductible selected by the insured.  If the policy coverage were not relevant to the deductible, then the insurer would have no reason to offer reduced premiums in exchange for a higher deductible.  Such a system cannot be what the legislature intended when it enacted a law that requires a provider charge the "insurer and injured party only a reasonable amount."  § 627.736(5)(a), Fla. Stat. (2013).  The legislature established what is reasonable through the adoption of predetermined fee schedule limitations.[5]

To take the fee schedule out of the abstract, we apply it to the hypothetical scenario shown below:



In this example, applying the deductible to the billed charge, before reducing the charge to the amount on the fee schedule, allows a provider to charge the insurer and injured party an amount more than a "reasonable fee."  This, as we know, would be contrary to the plain language of the statute.  The insurer's proposed method, however, results

---

[5] In further support, section 627.736(9), Florida Statutes (2013) presents another example of the legislature recognizing the limits on the amount the insurer and insured may pay a provider.  This subsection allows an insurer to waive the deductible and pay more than otherwise allowed by the statute if the insured elects to use the insurer's preferred provider.  To apply the deductible in the manner sought by the providers would allow for payment beyond the maximum amounts, but not in the specific situation authorized by the legislature in this subsection.

in the provider being paid the amount the legislature has determined to be reasonable.

Shown below is the same example, but without a deductible:



In this example, the provider receives the same payment regardless of which method is used. This is consistent with the plain language of the statute, which establishes a maximum payment to be paid by the insurer and insured. The legislature did not indicate that maximum payment could be exceeded if the insured elected a policy deductible, and we cannot write such an exception into the statute.

The fact that in some circumstances, such as in this case, the insurer is not required to pay the provider because the deductible is unmet does not change the analysis. The chart below represents the dollar figures at issue in the present case:



Collectively, the providers billed $1,812. After applying the fee schedule, the insurer reduced the amount to $825.96. Incidentally, the insured's deductible was $1,000 so the insurer was not required to pay the provider. Nevertheless, the providers were still entitled to collect the $825.96 in the form of the deductible from the insured. This, as the legislature has found, is reasonable for the specific charges at issue. Because the legislature has established reasonableness as the maximum charge, the provider is

11

simply receiving what the legislature has permitted. Nothing more, nothing less.

For these reasons, the county court erred when it entered summary judgment in favor of the provider. As noted, the parties agree that the insurer elected to use the second methodology, which allows for application of the statutory fee schedule. The insurer was thus entitled to reduce the billed charges to those considered reasonable by the legislature and under the insurance policy. Here, the insurer reduced the billed charges in a manner consistent with section 627.736(5)(a)(1). That amount represents the maximum the provider can charge the insurer and injured party, and is the limit the insurer and injured party must pay. It is also the amount to which the policy deductible logically applies.

### *Conclusion*

The PIP statute allows insurers to offer policies with varying deductibles. § 627.739(2), Fla. Stat. The statute instructs that the deductible is to be applied to 100% of the expenses and losses described in section 627.736, Florida Statutes. The expenses and losses described in section 627.736 require that all expenses be reasonable, and the statute provides that the amount charged to both the "insurer and injured party" must be reasonable. The statute also determines what is reasonable—a predetermined fee schedule. To apply the deductible to the total amount billed, even if the amount exceeds the statutory fee schedule, would render portions of the legislation meaningless.

Instead, we must apply the statute in the manner that the legislature intended. A provider may not bill the insurer and injured party more than is reasonable. The insurer may reduce the amount of the provider's bill to a reasonable amount, as provided on the fee schedule. Then, after determining the reasonable amount, the insurer may apply the deductible.

We answer the rephrased certified question in the negative, reverse the judgment in favor of the provider, and remand for further proceedings not inconsistent with this opinion.

*Reversed and remanded; conflict certified.*

FORST, J., concurs.
GROSS, J., dissents with opinion.

12

GROSS, J., dissenting.

I dissent for the reasons set forth in my dissent to the Court's opinion in *USAA Gen. Indem. Co. v. Gogan a/a/o Tara Ricks*, No. 4D16-3313 (Mar. 14, 2018).

*       *       *

***Not final until disposition of timely filed motion for rehearing.***