# Supreme Court of Florida

_____

No. SC18-278
_____

**PROGRESSIVE SELECT INSURANCE COMPANY,**
Petitioner,

vs.

**FLORIDA HOSPITAL MEDICAL CENTER, etc.,**
Respondent.

December 28, 2018

CANADY, C.J.

In this case, we consider the proper method of applying a personal injury

protection ("PIP") insurance policy deductible to a medical provider's bill for

hospital emergency services and care. The issue presented is whether section

627.739(2), Florida Statutes (2014), requires the deductible to be applied before or

after medical charges are reduced under the reimbursement limitation in section

627.736(5)(a)1.b., Florida Statutes (2014). We have for review the decision of the

Fifth District Court of Appeal in _Progressive Select Insurance Co. v. Florida_

_Hospital Medical Center_ (_Progressive_), 236 So. 3d 1183 (Fla. 5th DCA 2018).

There, the district court held that the deductible should be subtracted from the total

charges—prior to application of the reimbursement limitation—and certified the following question to be of great public importance:

> WHEN CALCULATING THE AMOUNT OF PIP BENEFITS DUE AN INSURED, DOES SECTION 627.739(2), FLORIDA STATUTES, REQUIRE THAT THE DEDUCTIBLE BE SUBTRACTED FROM THE TOTAL AMOUNT OF MEDICAL CHARGES BEFORE APPLYING THE REIMBURSEMENT LIMITATION UNDER SECTION 627.736(5)(a)1.b., OR MUST THE REIMBURSEMENT LIMITATION BE APPLIED FIRST AND THE DEDUCTIBLE SUBTRACTED FROM THE REMAINING AMOUNT?

*Id.* at 1192. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

While this case was pending in this Court, the Fourth District issued its opinion in *State Farm Mutual Automobile Insurance Co. v. Care Wellness Center, LLC* (*Care Wellness*), 240 So. 3d 22 (Fla. 4th DCA 2018). The Fourth District concluded that the deductible should be applied after charges are reduced under any fee schedule found in section 627.736. *See id.* at 24. Accordingly, it certified conflict with the Fifth District in *Progressive*. *Id.*

We answer the certified question by holding that section 627.739(2) requires the deductible to be applied to the total medical charges prior to reduction under the reimbursement limitation in section 627.736(5)(a)1.b. Therefore, we approve the Fifth District's decision in *Progressive* and disapprove the Fourth District's decision in *Care Wellness*.

## BACKGROUND

Reimbursement for hospital emergency services and care is made under the framework established in section 627.736(5), subject to the deductible provided for in section 627.739(2). Section 627.736(5)(a)1. authorizes insurers to "limit reimbursement to 80 percent of" a "schedule of maximum charges." Under the schedule of maximum charges, reimbursement for hospital emergency services and care is limited to "75 percent of the hospital's usual and customary charges." § 627.736(5)(a)1.b., Fla. Stat. Under section 627.739(2), insureds may elect a deductible of $250, $500, or $1,000. Central to the dispute here is this provision of section 627.739(2): "The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736."

Progressive issued a PIP insurance policy to Jonathan Parent, who elected a $1,000 deductible. *See Progressive*, 236 So. 3d at 1185. After Parent was injured in an automobile accident, he received treatment at Florida Hospital Medical Center ("Florida Hospital"). *Id.* Florida Hospital submitted the resulting medical bills to Progressive under an assignment of benefits. *Id.*

The dispute in this case arose when Florida Hospital challenged the way that Progressive applied the deductible to its bill. Florida Hospital's bill subtracted the deductible before reducing the fee under section 627.736(5)(a)1.b. The Fifth

District illustrated the calculation that Florida Hospital asserted was appropriate as follows:

$2,781.00  Total hospital charge
-$1,000.00  Parent's PIP deductible
$1,781.00
    x 75%  Applying section 627.736(5)(a)1.b.
$1,335.75
    x 80%  Applying section 627.736(5)(a)1.
$1,068.60  Amount due

*Id.* Progressive submitted payment, but adjusted the charge by applying the reimbursement limitation before subtracting the deductible:

$2,781.00  Total hospital charge
    x 75%  Applying section 627.736(5)(a)1.b.
$2,085.75
-$1,000.00  Parent's PIP deductible
$1,085.75
    x 80%  Applying section 627.736(5)(a)1.
$  868.60  Amount due

*Id.* Florida Hospital then filed suit in county court to recover the $200 difference between the amount billed and the reduced sum paid by Progressive. *Id.* The county court granted summary judgment in favor of Florida Hospital. *Id.* Progressive appealed, and the circuit court affirmed the judgment. *Id.*

Progressive next filed a petition for writ of certiorari with the Fifth District, seeking second-tier review. *See id.* After rehearing, the district court found "no divergence from the correct law in the circuit court's decision." *Id.* at 1192. The Fifth District held that section 627.739(2) "indicates that the deductible applies to

- 4 -

'100 percent of the [insured's] expenses and losses.' " *Id.* at 1186. The district court therefore rejected Progressive's argument that the provider's charges should be reduced under the reimbursement limitation before subtracting the deductible. *Id.* at 1187. "[U]sing [this] methodology," the Fifth District concluded, "would render meaningless the requirement" that the deductible be applied to all expenses and losses. *Id.*

The district court next contrasted the present version of section 627.739(2) with an earlier version of the statute. *Id.* at 1187-89. The Fifth District noted that section 627.739(2) previously required the deductible to be subtracted "from the benefits otherwise due" an insured. *Id.* at 1188. In 2003, the district court recognized, the Legislature amended the statute to provide for the deductible's application to "100 percent of . . . expenses and losses." *Id.* The Fifth District determined that this "substantive change" to the statute demonstrated legislative intent for the deductible to be subtracted from the total charges. *Id.* at 1189. The district court also acknowledged "that during the 2016 legislative session, the Florida Legislature failed to enact a proposed bill" that would have amended "section 627.739(2) to incorporate the method[] of subtracting the deductible" advanced by Progressive. *Id.*

Finally, the Fifth District rejected Progressive's argument that its interpretation of section 627.739(2) would prevent medical providers from

"render[ing] a bill for services that is unreasonable." *Id.* at 1190. The district court found the assertion unpersuasive for three reasons. First, the court determined that Progressive's reading of the statute "overlook[ed] the distinctions between a deductible and a statutory reimbursement limitation." *Id.* A deductible, the Fifth District explained, is an amount for which the policyholder agrees to self-insure. *Id.* Reimbursement limitations, on the other hand, "provide a methodology" for calculating benefits owed the insured after the deductible is met and "coverage is triggered under the policy." *Id.* at 1190-91. Second, the district court reasoned that the policyholder is free "to contest any bill that" he or she "is required to pay to meet the deductible." *Id.* at 1191. Third, the Fifth District invoked the principle that the Florida Motor Vehicle No-Fault Law "must be construed in favor of the insured." *Id.* Interpreting section 627.739(2) in the manner advocated by Progressive would not further that principle, the district court opined, because it "would allow the insurer to pay less in benefits than would otherwise be due." *Id.* at 1191-92. Therefore, the Fifth District denied the petition for writ of certiorari and certified the above question to be of great public importance. *Id.* at 1192.

## ANALYSIS

Because resolving the certified question requires us "to interpret provisions of the Florida Motor Vehicle No-Fault Law," the "standard of review is de novo."

*Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975 (Fla. 2017)

(quoting *Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.*, 141 So. 3d 147, 152

(Fla. 2013)).  We explain our decision in two parts.  First, we examine the text of

section 627.739(2) and consider its relationship to section 627.736.  Second, we

review the history of section 627.739(2).

**Analysis of Section 627.739(2)**

Section 627.739(2), Florida Statutes, states, in relevant part:

> Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, and $1,000.  *The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736.*  After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1).

§ 627.739(2), Fla. Stat. (emphasis added).  Interpreting the statute requires us to

identify "the expenses and losses described in [section] 627.736."  Though

"expenses and losses" are not expressly defined in section 627.736, the terms are

used throughout section 627.736(1).  Section 627.736(1)(a) references "reasonable

*expenses*" for medically necessary services provided after an automobile accident.

§ 627.736(1)(a), Fla. Stat. (emphasis added).  Section 627.736(1)(b) discusses

"*loss* of gross income and *loss* of earning capacity" caused by the insured's

inability to work, and "*expenses* reasonably incurred in obtaining" services for

household chores that the insured would have otherwise performed.

§ 627.736(1)(b), Fla. Stat. (emphasis added).

Section 627.739(2) contrasts these "expenses and losses" with the "benefits" available to an insured "[a]fter the deductible is met." Section 627.736(1) describes "benefits" and places them in two relevant categories: disability and medical benefits.[1] Disability benefits, as explained in section 627.736(1)(b), include 60% of loss of income due to the insured's inability to work, and 60% of expenses for services he or she is unable to perform. Section 627.736(1)(a) provides that medical benefits—at issue in this case—are 80% of reasonable expenses for medical services. As previously mentioned, in calculating reasonable medical expenses, section 627.736(5)(a)1. permits insurers to "limit reimbursement to 80 percent of" a "schedule of maximum charges." Under the fee schedule, compensation for hospital emergency services and care is capped at 75% of the provider's "usual and customary charges." § 627.736(5)(a)1.b., Fla. Stat.

A plain reading of the statutory provisions makes clear that the deductible must be subtracted from the provider's charges before the reimbursement limitation is applied. In the context of section 627.736(1), "expenses and losses" refers to something different from "benefits." "Benefits" are the amount paid by the insurer—determined by the 60% and 80% methodologies, and governed by the

---

1. Section 627.736(1)(c) describes a third category, "[d]eath benefits of $5,000 per individual," but these benefits are exempt from application of the deductible. § 627.739(2), Fla. Stat.

- 8 -

fee schedule, when applicable. "Expenses and losses," on the other hand, refers to the total charges submitted to the insured—not only those which may be recovered as benefits. And section 627.739(2) provides that the deductible must be applied to 100% of such "expenses and losses." Subtracting the deductible from the reduced fee schedule amount would violate this requirement. The reference in section 627.739(2) to "100 percent of the expenses and losses described in [section] 627.736" thus is to the amount charged before the application of the reimbursement limitation authorized by section 627.736(5)(a)1. To conclude otherwise would deprive the statute's reference to "100 percent" of its manifest meaning.

Progressive argues that when an insurer limits reimbursement under section 627.736(5)(a)1., the "expenses" identified in section 627.739(2) may not exceed the schedule of maximum charges. In support of its claim, Progressive relies on the Fourth District's decision in *Care Wellness*. There, the Fourth District recognized that "[s]ection 627.736 contains several references to 'expenses,' " and found each relevant section to contain a direct or indirect "requirement that the expenses be reasonable." *Care Wellness*, 240 So. 3d at 26. Section 627.736(5)(a), the district court noted, specifically required that "the insurer and injured party" be charged "a reasonable amount." *Id.* at 27. Therefore, the Fourth District concluded that the reasonableness requirement was not limited to the benefits paid

- 9 -

by the insurer, and instead "applie[d] to the totality of the charges." *Id.* at 26-27. Because it found that the Legislature had "established what is reasonable through the adoption of" the schedule of maximum charges, the Fourth District determined that "there is no PIP claim until the provider's bill is reduced, if necessary, to the amount set forth in section 627.736(5)(a)1." *Id.* at 29. And "[i]f there is no PIP claim until the amount is reduced to the amount found to be reasonable by the legislature, then there is nothing to apply the deductible to until the amount is reduced." *Id.* Accordingly, the Fourth District held that the deductible should be applied to medical charges after adjustment under the fee schedule. *Id.*

We conclude that the Fourth District's position contradicts the plain language of section 627.736(5)(a)1. The Fourth District concluded that charges must be decreased under the fee schedule prior to application of the deductible. But section 627.736(5)(a)1. only permits an "insurer" to limit "reimbursement" based on the schedule of maximum charges. Before the deductible is satisfied, "the insurer is not reimbursing the medical provider"; rather, the policyholder is compensating the provider. *USAA Gen. Indem. Co. v. Gogan*, 238 So. 3d 937, 943 (Fla. 4th DCA 2018) (Gross, J., dissenting); *see Int'l Bankers Ins. Co. v. Arnone*, 552 So. 2d 908, 911 (Fla. 1989) (stating that "an insurance company's obligation to pay" will not "ripen" until the deductible is met). There is no basis for concluding that the reimbursement limitation applies to charges included in the

- 10 -

deductible, "which the insured alone is obligated to pay and which are not recoverable as benefits under the policy." *Progressive*, 236 So. 3d at 1191.

## History of Section 627.739(2)

The history of section 627.739(2) further indicates that it currently requires the deductible to be subtracted from the total medical charges before the reimbursement limitation is applied. Prior to 2003, section 627.739(2) stated, in pertinent part:

> Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, $1,000, and $2,000, *such amount to be deducted from the benefits otherwise due each person subject to the deduction*.

§ 627.739(2), Fla. Stat. (2002) (emphasis added). In *Govan v. International Bankers Insurance Co.*, 521 So. 2d 1086 (Fla. 1988), we construed the earlier version of the statute. We determined that "benefits otherwise due" referred to the "amount of . . . medical expenses payable under the policy." *Id.* at 1087 (emphasis omitted) (quoting *Int'l Bankers Ins. Co. v. Govan*, 502 So. 2d 913, 914 (Fla. 4th DCA 1986)). Because coverage was limited to 80% of medical expenses, *id.*, we found that the deductible should be applied to the medical provider's charges after the 80% reduction. *Id.* at 1088.

In so ruling, we recognized that we lacked the "authority to change the clear intent and purpose of a statute that is not vague and ambiguous," even if we "disagree[d] with the legislative policy underlying the statute." *Id.* We suggested

that any complaints about the policy "be addressed to the legislature," which, we noted, had "failed to enact a bill which would have amended the statute to make it consistent with the statutory interpretation presented . . . by the petitioner." *Id.* at 1088 & n.*.

In 2003, the Legislature amended section 627.739(2) to require that "[t]he deductible amount . . . be applied to 100 percent of the expenses and losses described in s. 627.736." Ch. 2003-411, § 9, Laws. of Fla. Then, "[a]fter the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1)." *Id.*

That it replaced the phrase "benefits otherwise due" with "100 percent of the expenses and losses" indicates that the Legislature—in response to *Govan*—amended the statute to require that the deductible apply to the total charges submitted to the insured. The 2003 amendment further moved the term "benefits" to the next sentence of section 627.739(2)—"which discusses the insurer's liability after the deductible is satisfied." *Progressive*, 236 So. 3d at 1189 (emphasis omitted). Thus, the revised statute distinguishes between the total "expenses and losses" from which the deductible is subtracted and the "benefits" that may be received after the reimbursement limitation is applied. *Id.*

Progressive argues that "100 percent of the expenses and losses described in [section] 627.736" refers not to the provider's total charges, but instead to 100% of

- 12 -

the reasonable expenses set out in the "schedule of maximum charges" in section 627.736(5)(a)1. Essentially, Progressive erroneously contends the 2003 amendment clarifies that the deductible should be applied to 100%—rather than 80%—of the applicable fee schedule amount.

It is correct that the "schedule of maximum charges" in section 627.736(5)(a)1.—with the limitation of charges for hospital emergency services and care to "75 percent of the hospital's usual and customary charges," § 627.736(5)(a)1.b., Fla. Stat.—was not adopted until four years after the adoption of the provision requiring application of the deductible to "100 percent of the expenses and losses described in [section] 627.736." *See* ch. 2007-324, § 20, Laws of Fla. But there is no basis for concluding that the "100 percent" requirement extends to one statutory provision that limits reimbursements for expenses but not to another similar provision that also limits reimbursements for expenses. The "100 percent" requirement mandates that the deductible be applied to the full amount of the expenses identified in section 627.736 not only before imposition of the reimbursement limitation existing when the "100 percent" requirement was adopted, but also before imposition of the subsequently adopted reimbursement limitation.

## CONCLUSION

Section 627.739(2) requires the deductible to be subtracted from "100 percent" of expenses and losses, not 75% of a provider's customary charges. We therefore hold that, when calculating the PIP benefits due an insured, the deductible must be subtracted from the total medical charges before applying the reimbursement limitation in section 627.736(5)(a)1.b. Accordingly, we approve *Progressive* and disapprove *Care Wellness*.

It is so ordered.

PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.

NO MOTION FOR REHEARING WILL BE ALLOWED.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

Fifth District - Case No. 5D16-2333

(Orange County)

Michael C. Clarke of Kubicki Draper, P.A., Tampa, Florida,

for Petitioner

Chad A. Barr of Law Office of Chad A. Barr, P.A., Altamonte Springs, Florida,

for Respondent

William W. Large of Florida Justice Reform Institute, Tallahassee, Florida; and Peter J. Valeta of Cozen O'Connor, Chicago, Illinois,

for Amicus Curiae Florida Justice Reform Institute

Rebecca O'Dell Townsend and Scott W. Dutton of Dutton Law Group, P.A., Tampa, Florida; and David Dougherty of Law Office of David S. Dougherty, Tampa, Florida,

      for Amici Curiae GEICO General Insurance Company, GEICO Indemnity Company and Government Employees Insurance Company

Matthew Coleman Scarfone and Maria Elena Abate of Colodny Fass, Sunrise, Florida; and Suzanne Youmans Labrit, Jason Gonzalez, and Amber Stoner of Shutts & Bowen LLP, Tallahassee, Florida,

      for Amici Curiae Property Casualty Insurers Association of America and Personal Insurance Federation of Florida

David M. Caldevilla of de la Parte & Gilbert, P.A., Tampa, Florida; and Mac S. Phillips of Phillips Tadros, P.A., Fort Lauderdale, Florida,

      for Amicus Curiae Floridians for Fair Insurance, Inc.

Anthony D. Barak of Barak Law Group, Bradenton, Florida; Christopher P. Calkin and Mike N. Koulianos of The Law Offices of Christopher P. Calkin, P.A., Tampa, Florida; Lorca Divale of The Physician Collections Group, P.A., Tampa, Florida; and Chad L. Christensen of Ged Lawyers, LLP, Boca Raton, Florida,

      for Amici Curiae The Chambers Medical Group, Inc., Clearview Imaging, LLC, MRI Associates of St. Pete, Inc., and Pagano Chiropractic, P.A.

Edward H. Zebersky and Mark S. Fistos of Zebersky Payne, LLP, Fort Lauderdale, Florida; and Lawrence M. Kopelman of Lawrence M. Kopelman, P.A., Fort Lauderdale, Florida,

      for Amicus Curiae Florida Medical Association