# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-2618
LT Case No. 2024-CA-1239

_____

CAREY BAKER,

    Appellant,

    v.

MARK V. JORDAN and D. ALAN
HAYS, AS SUPERVISOR OF
ELECTIONS, LAKE COUNTY,
FLORIDA,

    Appellees.

_____

On appeal from the Circuit Court for Lake County.
Gary L. Sanders, Judge.

Ricky L. Polston, Daniel Nordby, Benjamin J. Gibson, and Amber S. Nunnally, of Shutts & Bowen LLP, Tallahassee, for Appellant.

John T. LaVia, III, of Gardner, Bist, Bowden, Dee, LaVia, Wright, Perry & Harper, P.A., Tallahassee, and Ronald A. Labasky, Tallahassee, for Appellee, D. Alan Hays.

Laura K. Hargrove, of Gause & Hargrove, PLLC, Tavares, for Appellee, Mark V. Jordan.

November 15, 2024

SOUD, J.

Appellant Carey Baker, the incumbent Lake County Property Appraiser, appeals the trial court's final order denying relief in his action seeking to disqualify Appellee Mark Jordan as a candidate for that office in the 2024 General Election. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm the trial court's denial of relief.[1]

I.

The saga surrounding the two gentlemen running for election as the Lake County Property Appraiser reveals eleventh-hour political strategies fraught with corresponding political risks. While both Baker and Jordan suggest that the means employed by the other in qualifying to run have created a tempest within the local Republican Party, the facts in the record before us are not materially disputed.

In November, the voters in Lake County will be asked to elect, among other officials, the property appraiser for the coming four-year term. Anyone wishing to run was required to file all necessary paperwork to qualify as a candidate between 12:00 p.m. Monday, June 10, 2024, and 12:00 p.m. Friday, June 14, 2024. After this qualifying week passed, D. Alan Hays, the Lake County Supervisor of Elections, certified that both Baker and Jordan qualified to run for property appraiser. The origins of their respective candidacies are central to this case.

In January 2024, months before qualifying week, Baker filed to run as a Republican Party candidate[2] for re-election. To this end,

_____

[1] On October 14, 2024, to ensure the parties before us received a timely decision in this case, we entered our Order affirming the trial court's final order and stating this opinion would follow. Though this opinion is issued after the contemplated election has occurred, it is written to reflect the record as it existed on October 14, 2024.

[2] Pertinent for our purposes, the Election Code defines "candidate" as "any person to whom any one or more of the following applies: . . . Any person who appoints a treasurer and designates a primary depository[; or] Any person who files

2

he submitted to the Supervisor of Elections his (1) "Appointment of Campaign Treasurer and Designation of Campaign Depository for Candidates" (form DS-DE 9) and (2) "Statement of Candidate."

When qualifying week came, Baker waited until June 14, 2024—the final day of qualifying—to officially qualify as a candidate. He arrived at the Supervisor of Elections office shortly before 11:30 a.m., just more than a half-hour before the qualifying deadline. As required by the Florida Election Code, Chapters 97–106, Florida Statutes, Baker filed verification and receipt of his "2023 Full and Public Disclosure of Financial Interests," at 11:22 a.m. Importantly, this did not complete his qualifying to run for re-election. Baker deliberately remained in the Supervisor's office, purportedly contemplating whether he wished to continue running as the Republican Party candidate or to run as a write-in candidate. As a write-in candidate, Baker's name would not be printed on the ballot, but he would avoid paying the $10,685.04 qualifying fee required by Florida law to run as a Republican candidate. Ultimately, Baker qualified to run as a write-in candidate for property appraiser by providing to the Supervisor his "Candidate Oath – State and Local Partisan Office – Write-In Candidate" (DS-DE 301C). This final document for qualifying was stamped as received by the Supervisor's office at 12:01 p.m.

Relatedly, Jordan qualified as a candidate for the North Lake County Hospital District Board, Seat #5 on Monday, June 10, the first day of qualifying week. As part of qualifying, Jordan filed his DS-DE 9 form appointing his campaign treasurer and designating

---

qualification papers and subscribes to a candidate's oath as required by law." *See* § 97.021(7)(d)–(e), Fla. Stat. (2024). "Filing" as a candidate is distinct from "qualifying" as a candidate. One may "file" as a candidate at any time prior to qualifying week and must do so before he may accept campaign contributions and make campaign expenditures. *See* § 106.021(1)(a), Fla. Stat. One "qualifies" as a candidate to appear on the ballot only during the defined qualifying week. To qualify, a candidate must provide to the elections office all necessary qualifying paperwork and pay the qualifying fee (or, alternatively, submit enough candidate petitions to appear on the ballot).

a campaign depository. On June 11, after re-filing his DS-DE 9 form to change his campaign depository, Jordan opened his campaign account. By June 12 he had deposited a total of $11,500 into the account, all of which Jordan personally loaned to his campaign. None of the campaign funds were contributions from any donor.

However, Jordan returned to the Supervisor of Elections office on June 14. As did all other candidates who arrived after 11:30 a.m. on the final day of qualifying, Jordan completed a "candidate qualifying reservation form," time-stamped at 11:48 a.m., and waited until a filing official could assist him. Ultimately, Jordan filed the paperwork necessary to qualify as a Republican Party candidate for property appraiser. In doing so, he re-filed his DS-DE 9 form, stating that he was "Refiling to Change: Office" and further stated that the "Office Sought" was Lake County Property Appraiser. He also paid the qualifying fee of $10,685.04 via a check drawn on his "Mark V. Jordan Campaign Account," which he opened while a candidate for the hospital board. Jordan's qualifying documents to run for property appraiser were stamped as received at times ranging from 12:26 p.m. to 12:46 p.m.

The result of each candidate's strategy proves important. Jordan's will be the only name on the ballot as a candidate for Lake County Property Appraiser. The incumbent Baker, whose name will not appear on the ballot, can receive a vote only if a voter chooses to write Baker's name in the blank space below Jordan's name on the ballot.

After qualifying closed, Baker filed suit against Jordan and Hays, in his capacity as the Lake County Supervisor of Elections, seeking an order requiring Jordan's decertification as a qualified candidate and enjoining the Supervisor from including Jordan's name on the general election ballot or counting any votes cast for him. In response, Jordan filed his answer, counterclaim, and crossclaim, seeking Baker's decertification as a qualified write-in candidate and "nam[ing] Jordan as the unopposed, duly qualified Republican Party candidate for the 2024 election of Lake County Property Appraiser." Following hearing, the trial court denied all requested relief.

This appeal by Baker followed. Jordan did not appeal.

4

## II.

In deciding this case, we review the trial court's factual findings for support by competent, substantial evidence. *See Wayne's Aggregate & Materials, LLC v. Lopez*, 391 So. 3d 633, 635 (Fla. 5th DCA 2024). The trial court's legal conclusions and interpretation of Florida statutes are reviewed de novo. *See id.*; *see also MB Doral, LLC v. Dep't of Bus. & Prof'l Reg., Div. of Alcoholic Beverages & Tobacco*, 295 So. 3d 850, 853 (Fla. 1st DCA 2020).

Baker argues, as he did below, that Jordan must be disqualified as a candidate for three reasons: (i) he failed to withdraw from the hospital board race before qualifying as a candidate for property appraiser and thereby qualified for more than one office, in violation of section 99.012(2), Florida Statutes (2024); (ii) he did not file his paperwork to qualify as a candidate for property appraiser until after the noon qualifying deadline had passed; and (iii) he failed to pay the qualifying fee from a campaign account opened specifically for his campaign for property appraiser. Each of Baker's arguments fails under Florida law.

## A.

Our analysis begins with the requirements of Florida law for one to qualify as a candidate for office. The Florida Election Code sets forth what one must do to become a candidate for office in the state. And as Judge Nordby cogently wrote for the First District, "The Legislature designed the process to facilitate ballot access." *Jones v. Schiller*, 345 So. 3d 406, 411 (Fla. 1st DCA 2022).

Generally, for an individual to qualify to run for a non-judicial, partisan county office such as the Lake County Property Appraiser, the Election Code requires that he provide five items to the supervisor of elections: (1) payment of the qualifying fee via "[a] properly executed check drawn upon the candidate's campaign account;" (2) the candidate's oath; (3) the written statement of political party affiliation (or no party affiliation); (4) the completed DS-DE 9 form appointing a campaign treasurer and designating a campaign depository; and (5) the full and public disclosure or statement of financial interests required by section 99.061(5). *See*

§ 99.061(7)(a)1.–5., Fla. Stat. Further, Florida law expressly prohibits an individual from qualifying "for more than one public office, whether federal, state, district, county, or municipal, if the terms or any part thereof run concurrently with each other." § 99.012(2), Fla. Stat.

The Election Code designates Florida's Secretary of State as the "chief elections officer" and charges the Secretary to "[o]btain and maintain uniformity in the interpretation[3] and implementation of the election laws." *See* § 97.012(1), Fla. Stat. The Election Code further authorizes the Secretary to "prescribe by rule requirements for filing papers to qualify as a candidate." *See* § 99.061(10), Fla. Stat.

As chief elections officer, the Secretary of State has adopted numerous forms, including forms for each of the documents required by the Election Code to be filed with the filing officer, such as the DS-DE 9 form. The Department of State also has adopted Rule 1S–2.0001(2)(a) of the Florida Administrative Code, which provides, "Timely filing is of the essence in qualifying as a candidate. In order to be deemed timely filed with the qualifying office, qualifying items must actually be present at the qualifying office's official physical location by the close of the qualifying period."

The Lake County Supervisor of Elections, as the filing officer, performs a "ministerial function" in receiving and reviewing the required qualifying papers of a candidate, including determining whether the papers have been properly completed and, if required, appropriately verified. *See* § 99.061(7)(c), Fla. Stat. "The filing

---

[3] While certainly the implementation of the Election Code by the Secretary will necessarily and inherently involve his interpretation of the laws enacted by the Florida Legislature, the ultimate interpretation of statutes or rules belongs to Florida courts when presented in cases and controversies before us. The Florida Constitution mandates our authority and responsibility in this regard: "In interpreting a state statute or rule, a state court . . . may not defer to an administrative agency's interpretation of such statute or rule, and must instead interpret such statute or rule de novo." Art. V, § 21, Fla. Const.

6

officer may not determine whether the contents of the qualifying papers are accurate." *Id.*

## B.

"Fundamental to our system of government is the principle that the right to be a candidate for public office is a valuable one and no one should be denied this right unless the Constitution or an applicable valid law expressly declares him to be ineligible." *Wright v. City of Miami Gardens*, 200 So. 3d 765, 775 (Fla. 2016). In this case before us, both Baker and Jordan sought to exercise this right in the manner they saw fit.

Pertinent for our review, Jordan filed his papers to qualify as a Republican Party candidate for property appraiser, including, *inter alia*, his (1) re-filed "Appointment of Campaign Treasurer and Designation of Campaign Depository for Candidates" (form DS-DE 9), designating a "change" in office sought to Lake County Property Appraiser; and (2) a check for $10,685.04 from the "Mark V. Jordan Campaign Account" in payment of the qualifying fee. Upon receiving and reviewing the papers required by section 99.012(2), Florida Statutes, the Lake County Supervisor of Elections certified Jordan as a qualified candidate for property appraiser. Once Jordan had been so certified and secured access to the ballot for Lake County voters' consideration, the "only way" he could be disqualified by a Florida court is if some constitutional or statutory basis *requires* his disqualification. *See Jones*, 345 So. 3d at 412. And Baker has presented no such basis for Jordan's disqualification.

## 1.

First, Baker suggests that Jordan failed to properly withdraw from the hospital board race before qualifying as a candidate for property appraiser. As a result, Jordan in effect qualified for two offices with concurrent terms, which is plainly prohibited by section 99.012(2), Florida Statutes. Baker's argument is premised upon his conclusion that Jordan's "re-filing" of his form DS-DE 9 to "change" the office sought to property appraiser was insufficient to effectuate his withdrawal from the hospital board race. In short, Baker insists that these two statutory requirements cannot be fulfilled with one form filed with the Supervisor of Elections. This

argument, however, flies in the face of the Election Code and rules adopted by the Secretary of State.

On Monday of qualifying week, Jordan qualified to run for the hospital board, which included his filing, *inter alia*, his required DS-DE 9 form appointing his campaign treasurer and designating his campaign depository. Section 106.021(1)(a), Florida Statutes, which is cited on the DS-DE 9 form, requires this form be filed before Jordan could accept any campaign contribution or make any campaign expenditure.

Importantly, that statute also expressly provides in part:

> At the same time a candidate designates a campaign depository and appoints a treasurer, the candidate shall also designate the office for which he or she is a candidate. . . . **This subsection does not prohibit a candidate, at a later date, from changing the designation of the office for which he or she is a candidate.** However, if a candidate changes the designated office for which he or she is a candidate, the candidate must notify all contributors in writing of the intent to seek a different office and offer to return pro rata, upon their request, those contributions given in support of the original office sought.

§ 106.021(1)(a), Fla. Stat.

Thus, the Election Code expressly contemplates that a candidate who has previously designated a campaign depository and appointed a treasurer (filed a DS-DE 9 form) may "at a later date . . . chang[e] the designation of the office for which he . . . is a candidate." *See id.* The DS-DE 9 form expressly provides a space for a candidate to "change" the "office" he seeks. The language used by the DS-DE 9 form is the same language used in section 106.021(1), the very section cited on the form. And that language—specifically the use of the word "change"—is of import to this case. As used in this context, "change" is best defined as "to exchange for or replace with another, usually of the same kind or category; to lay aside, abandon, or leave for another; switch." *Change*, AMERICAN HERITAGE DICTIONARY (5th ed. 2011).

8

Given the plain language of the statute allowing candidates to change the office they seek, and considering the forms adopted by Florida's chief elections officer in implementing the Election Code, Jordan's refiled DS-DE 9 form changing the office sought to property appraiser was sufficient to both withdraw him from the hospital board race and enter him solely into the campaign for property appraiser. Baker's reliance on Rule 1S-2.0001(4) as requiring an additional written document expressing Jordan's intention to withdraw extends the language of the rule too far. The rule provides:

> Candidate withdrawal. A candidate may withdraw his or her candidacy by submitting a document specifying the candidate's withdrawal from the particular public office he or she seeks to the qualifying office before which he or she qualifies (or has qualified) by mail, facsimile, email, photocopy, scanned copy or other type of electronic transmission that contains the signature of the candidate. The withdrawal is not effective until it is received by the qualifying office.

Fla. Admin. Code R. 1S-2.0001(4). By the use of the word "may," which of course is permissive rather than mandatory,[4] the rule permits a previously qualified candidate to withdraw from a race and identifies acceptable means by which that candidate can withdraw from the race (including by email or facsimile, means that would not be available for one seeking to qualify). Indeed, if we were to read the rule as setting forth the only means available to withdraw from a race and, if applicable, change to another race, a candidate would not be able to withdraw by delivering his withdrawal document in person to the qualifying office. Certainly

---

[4] See *Progressive Select Ins. Co. v. Fla. Hosp. Med. Ctr.*, 236 So. 3d 1183, 1187 (Fla. 5th DCA 2018), *approved*, 260 So. 3d 219 (Fla. 2018) ("The word 'may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word 'shall.'").

such a reading is not reasonable—nor is it permitted by the rule's text.[5]

2.

Baker next contends that even if Jordan's re-filed DS-DE 9 changing the office sought to property appraiser was sufficient to effectuate his withdrawal from the hospital board race, his qualifying papers were not timely filed. His argument in this regard need not detain us long.

The deadline for filing qualifying papers for the Lake County Property Appraiser race was 12:00 p.m. on Friday, June 14, 2024. Florida law declares that time is of the essence when qualifying to run for office. *See* Fla. Admin. Code R. 1S–2.0001(2)(a). This rule further provides, "In order to be deemed timely filed with the qualifying office, qualifying items must actually be present at the qualifying office's official physical location by the close of the qualifying period." *Id.*

Based upon the parties' stipulation, the trial court found that Jordan arrived at the Supervisor of Elections office by 11:48 a.m., just twelve minutes before the noon qualifying deadline. Upon his arrival, Jordan signed a "candidate qualifying reservation form" and waited until a filing official could assist him. The record suggests that when he arrived, all items necessary to qualify for property appraiser were completed and ready to be filed. As a result, because Jordan was present at the Supervisor of Elections office prior to the noon close of qualifying—with all completed paperwork necessary for qualifying ready to be filed—Florida law deems his qualifying documents to have been timely, even though the filing officer was not able to take possession of Jordan's papers until after noon had passed. *See id; see also Bayne v. Glisson*, 300 So. 2d 79, 83 (Fla. 1st DCA 1974).

---

[5] Baker's reliance on *State ex rel. Fair v. Adams*, 139 So. 2d 879 (Fla. 1962), similarly is unavailing, as *Adams* involved a candidate affirmatively seeking to qualify for numerous state offices with contemporaneous terms rather than, as Jordan does here, seeking to change the office being sought.

10

3.

Finally, Baker argues that even if Jordan timely filed the papers necessary to withdraw from the hospital board race and otherwise qualify for the property appraiser race, Jordan is disqualified because he failed to pay the qualifying fee from a campaign account opened specifically for the property appraiser's race. Here, too, Baker's argument is not supported by Florida law.

The Election Code requires a candidate to pay the applicable qualifying fee with "[a] properly executed check drawn upon the candidate's campaign account." *See* § 99.061(7)(a)1., Fla. Stat. Baker does not suggest that Jordan failed to properly execute the check or that the check was not drawn on Jordan's campaign account. Rather, Baker argues that to allow Jordan to pay the qualifying fee for property appraiser out of the campaign account he opened for the hospital board race would be tantamount to allowing Jordan to use an interchangeable "campaign flex account," which is not contemplated by the Election Code.

Section 106.021(1)(a), Florida Statutes, resolves Baker's argument by setting forth what is required regarding a candidate's campaign account when the candidate changes the office that he seeks. Upon changing the office for which he is running, the Election Code does not require a candidate to open a new campaign account. Rather, "the candidate must notify all contributors in writing of the intent to seek a different office and offer to return pro rata, upon their request, those contributions given in support of the original office sought." § 106.021(1)(a), Fla. Stat. In the absence of such a request within the statutory timeframe, the candidate "may use any contribution that a donor does not request be returned . . . for the newly designated office" up to the contribution limits for the newly designated office. *See id.* Thus, the text is clear that the race for which the account was opened is not the focus of section 106.021(1)(a); rather, it is ensuring the contributor's intent is honored as it pertains to previously donated funds for a race other than the one to which the contributor had given.

Here, Jordan filed his original DS-DE 9 for the hospital board race on June 10, 2024. On June 11, he refiled his DS-DE 9 for the hospital board race and changed his designated campaign

11

depository to United Southern Bank. That same day, he personally loaned his campaign $1,000. On June 12, he personally loaned his campaign an additional $10,500. After he loaned his campaign the funds, Jordan again refiled his DS-DE 9 on June 14, 2024 (along with the other necessary papers to qualify to run for property appraiser), and changed the office sought to property appraiser. His campaign depository remained unchanged, and there is no record evidence that any other campaign contributions were at any material time received from any contributor. As a result, the funds in the campaign account, being loaned from Jordan himself and not given by any contributor, were available for his use to qualify to run for property appraiser, if Jordan so desired. And it was from this account with the designated depository, and the funds he personally loaned his campaign, that Jordan paid the qualifying fee to run for property appraiser. In so doing, he did not run afoul of the Election Code.

"Courts are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." *Hill v. Davis*, 70 So. 3d 572, 575 (Fla. 2011) (internal quotation marks omitted).

## III.

Accordingly, as Baker has failed to present any constitutional or statutory basis requiring Jordan's disqualification and decertification as a candidate for Lake County Property Appraiser, the trial court's final order denying the relief sought in Baker's First Amended Complaint is AFFIRMED.

It is so ordered.

EDWARDS, C.J., and JAY, J., concur.

12

13

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

13